UNITED STATES of America, Plaintiff–Appellee,

v.

Dale Allen ROBERTSON, Defendant–Appellant.

No. 92–3374.

United States Court of Appeals, Tenth Circuit.

March 21, 1994.

Rehearing Denied May 9, 1994.

James E. Rumsey, Lawrence, KS, for defendant-appellant.

Gregory G. Hough, (Lee Thompson, U.S. Atty., with him on the Brief) Asst. U.S. Atty., District of Kansas, Topeka, KS, for plaintiff-appellee.

Before EBEL and KELLY, Circuit Judges, and COOK, Senior District Judge.*

H. DALE COOK, Senior District Judge.

Defendant-appellant Dale Allen Robertson was convicted after a jury trial of three counts. Counts 1 and 3 alleged that on two separate occasions (August 23, 1991 and September 4, 1991, respectively), defendant did by force, violence and intimidation take sums of money from the Wellsville Bank, Wellsville, Kansas, in violation of 18 U.S.C. § 2113(a) and § 2113(d). Count 2 alleged that on August 23, 1991, the defendant knowingly used and carried a firearm during and in relation to a crime of violence, namely the robbery of the Wellsville Bank on August 23, 1991 alleged in Count 1, in violation of 18 U.S.C. The jury convicted the defendant in

---

* Honorable H. Dale Cook, Senior Judge for the United States District Court for the Northern District of Oklahoma, sitting by designation.

Count 3 of the lesser included offense of bank robbery in violation of 18 U.S.C. § 2113(a). Mr. Robertson appeals his convictions to this Court and we affirm.

On July 1, 1991, defendant was paroled from the Kansas State Prison at Lansing, where he had been incarcerated for state court convictions. His last meeting with his parole officer, Rose Rice was August 6, 1991. The defendant failed to keep an August 28, 1991 appointment with Rice. On August 23, 1991 a man entered the Wellsville Bank wearing a cap bearing the Los Angeles Raiders logo pulled low, a beige plaid flannel long-sleeved shirt and sunglasses. After the man waited in line for a time, teller Steve Layton waited on him. The man threw a plastic grocery-type bag on the counter with one hand, and placed a sawed-off shotgun on the counter with his other hand. He instructed Layton to fill the bag, which Layton did with a total of $4,827.80. The robber left immediately. Teller Donna Cook also briefly observed the robber.

On August 31, 1991, defendant was arrested in Olathe, Kansas. A sawed-off shotgun was seized at the time, and defendant was incarcerated. At trial, Layton identified the shotgun which had been seized as the same or similar to the one used in the robbery of August 23, 1991. Defendant's bond was posted by an Angela Flowers, an acquaintance of the defendant, on September 3, 1991. Defendant spent that night with Ms. Flowers and her roommate, Carrie Pollock. The defendant persuaded Ms. Pollock to agree to loan him her 1987 silver Nissan Sentra automobile for the following morning. On the morning of September 4, 1991, defendant left the apartment dressed in a light purple shirt, black hat with yellow or gold lettering, dark jeans and black lace-up sneakers. Later that morning, a man dressed in identical fashion robbed the Wellsville Bank. Witnesses testified that it was the same man who had committed the robbery of August 23, 1991. After the robber left the bank, teller Donna Cook followed him and saw him enter a 1987 silver Nissan Sentra and drive away. At trial, Ms. Cook identified the automobile belonging to Carrie Pollock as being

the same or similar to the car driven by the robber.

On September 17, 1991, Ruby Robertson, defendant's mother, provided a pair of black lace-up tennis shoes and a black Los Angeles Raiders cap to FBI agents. (R.O.A., Vol. III, at 316–17). The items belonged to her son and were identified at trial as being the same or similar to those worn by the robber on August 23, 1991. Defendant's mother also testified at trial that FBI agents showed her a bank surveillance photograph of the robber and that she identified him as her son. She was again shown such a photograph during trial and again identified her son. (R.O.A., Vol. III, at 321–22).

On September 5, 1991, defendant was involved in a single car accident in a Toyota Celica he had recently purchased. The defendant abandoned the car after the accident. Police found in the car, among other things, a light purple shirt, sunglasses, a black hat with yellow or gold lettering and a pair of dark jeans. At trial, these items were identified as being the same or similar to what the robber had worn on September 4, 1991. On September 6, 1991, police were advised that defendant was being treated at Humana Hospital in Overland Park, Kansas for injuries he had received when he rolled a pickup truck he was driving. The truck had been stolen from a residence approximately four miles northeast from where the Toyota was wrecked. The defendant received a serious head injury and was in a coma for 31 days. Defendant was questioned by FBI agents on October 17, 1991, while recuperating at the Regency Health Care Center in Olathe, Kansas. No *Miranda* warnings were given. Upon being shown a bank surveillance photograph of the September 4, 1991 robbery, defendant identified himself in the photograph.

Defendant first argues that the trial court erred by admitting the statement of the defendant made in the hospital. He argues that (1) *Miranda* warnings were necessary and (2) the statement was involuntarily made. This issue was raised by motion to suppress before the trial court, which conducted an evidentiary hearing on April 10, 1992 and issued an order denying the motion

on May 7, 1992. In reviewing the denial of a defendant's motion to suppress evidence, we accept the trial court's findings of fact unless clearly erroneous, and the evidence is viewed in the light most favorable to the government. *United States v. Amos,* 984 F.2d 1067, 1073 (10th Cir.1993). Generally, involving motions to suppress evidence in which the government bears the burden of proof, the Supreme Court has held that a preponderance of the evidence standard applies. *See, e.g., United States v. Matlock,* 415 U.S. 164, 177–78 n. 14, 94 S.Ct. 988, 996–97 n. 14, 39 L.Ed.2d 242 (1974). On the issue of *Miranda,* the district court concluded "Defendant was not given *Miranda* warnings because he was not in custody." (R.O.A. Vol. 1, no. 38, p. 2). This Court has reviewed the transcript of the evidentiary hearing. FBI Agent Bouton testified at the hearing that the FBI did not intend to place the defendant in custody at the time of the interview. (R.O.A. Vol. 8, at 8), and the defendant was free to check himself out of the care center. *Id.* (This latter point was the subject of a factual finding by the district court). This Court has no basis for disputing the credibility determination which the district court obviously made. A person has been taken into police custody whenever he "has been deprived of his freedom of action in any significant way." *United States v. Perdue,* 8 F.3d 1455, 1463 (10th Cir.1993) (quoting *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966)). The only relevant inquiry is "how a reasonable man in the suspect's position would have understood his situation." *Id.* (quoting *Berkemer v. McCarty,* 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984)). The record does not reflect that the agents restrained the defendant's liberty by means of physical force or show of authority. *See United States v. Pena,* 920 F.2d 1509, 1515 (10th Cir.1990), *cert. denied,* 501 U.S. 1207, 111 S.Ct. 2802, 115 L.Ed.2d 975 (1991). From the record presented, we conclude that the district court was correct in its conclusion that the defendant was not in custody at the time of the questioning.

As to the issue of voluntariness, it is agreed by the parties that *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) is controlling. In that case, a man was compelled by "voices" to confess a crime to the police without any prompting on the authorities' part. The Supreme Court held that while the confessant's mental condition is a relevant inquiry, it does not conclude the due process analysis. Rather, "*coercive* police activity is a necessary predicate to the finding that a confession is not 'voluntary' ". *Id.* at 167, 107 S.Ct. at 522 (emphasis added). In other words, the police must somehow overreach by exploiting a weakness or condition known to exist. *United States v. Guerro,* 983 F.2d 1001, 1004 (10th Cir.1993). The district court accepted as credible Agent Bouton's testimony that the defendant seemed responsive and coherent when he was asked about himself, his relatives and the geographical area. Agent Bouton conceded that the defendant stated that he believed he had been in the hospital for five years, and that the defendant gave his age as 27 when in fact he was 38 years old at the time. (The district court's order contains a typographical error at page 2, stating that the defendant was 28 years old at the time of the interview). Agent Bouton further testified that he had spoken to a social worker familiar with the case prior to the interview, defendant's doctor apparently being unavailable, and learned that the defendant was taking no medication which would affect his mental faculties. Agent Bouton further acknowledged that some 12 days after the interview, the defendant was evaluated at the Federal Correctional Institution at Springfield, Missouri and that the report issued by the doctors there stated, among other things, that the defendant became easily confused when answering questions. The district court also took note of the Springfield report, but accepted the credibility of Agent Bouton's testimony that the defendant seemed lucid when answering his questions, except with relation to matters of time (length in hospital, age, etc.).

On appeal, we review the issue of voluntariness de novo, but the factual findings of the district court are reviewed under the clearly erroneous standard. *Guerro,* 983 F.2d at 1003. The district court's factual findings are based largely upon the credibili-

ty of Agent Bouton's testimony. We are unable to conclude that the district court's findings in that regard are clearly erroneous. Thus, there being no evidence in the record of government overreaching or coercion, we affirm the district court's decision not to exclude the evidence under *Connelly*. The defense was free to present to the jury evidence of the defendant's mental condition at the time of the interview, which under these facts goes to the weight and reliability, not the admissibility, of the defendant's statements.

■ Next, the defendant asserts that the trial court erred by acceding to the prosecution's request that the defendant be required to don the cap and dark glasses worn by the robber for purposes of an in-court identification by eyewitnesses to the robbery. No eyewitness had made an unequivocal identification through a pre-trial photo array. During the trial, a surveillance videotape of the robbery in question was played in such a manner that the jury could see both the defendant and videotape. The eyewitness first saw the defendant in the courtroom without the cap and glasses, and the items were donned in front of both the witness and the jury. The eyewitness then was asked to make the in-court identification. Defendant protests, arguing that the trial court should have applied the factors set forth in *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) and *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) regarding unduly suggestive identifications. The government argues that these protections apply only to suggestive *pre-trial* identifications, and in-court identifications based on them. Because the identifications challenged herein were in-court, with no prior pre-trial identification, the government contends that a *Biggers–Brathwaite* analysis is unnecessary. In support, the government cites *United States v. Domina*, 784 F.2d 1361, 1367–69 (9th Cir.1986) *cert. denied*, 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987) and *United States v. Brown*, 920 F.2d 1212 (5th Cir.) *cert. denied*, 500 U.S. 925, 111 S.Ct. 2034, 114 L.Ed.2d 119 (1991). In response, the defendant refers the Court to *Code v. Montgomery*, 725 F.2d 1316 (11th Cir.1984), which indicates that

even in the absence of a pretrial identification, the *Biggers–Brathwaite* standards apply to the in-court identification. This Court has not previously addressed the issue.

We have recently described *Biggers* as setting forth "five factors to be considered in determining the reliability of a *pre-trial* identification". *Grubbs v. Hannigan*, 982 F.2d 1483, 1490 (10th Cir.1993) (emphasis added). The factors are:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Biggers*, 409 U.S. at 199–200, 93 S.Ct. at 382. The factors are weighed against "the corruptive effect of a suggestive *pre-trial* identification procedure to determine whether the identification testimony should have been suppressed. *Grubbs*, 982 F.2d at 1490 (emphasis added). In *Brathwaite*, the Supreme Court identified the issue before it as whether due process required the exclusion of "*pretrial* identification evidence obtained by a police procedure that was both suggestive and unnecessary." 432 U.S. at 99, 97 S.Ct. at 2245 (emphasis added). The Supreme Court reaffirmed its holding in *Biggers*. After application of the factors to the facts before it, the Court concluded:

> Surely, we cannot say that under all the circumstances of this case there is a "very substantial likelihood of irreparable misidentification." Short of that point, such evidence is for the jury to weigh. We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.

*Brathwaite*, 432 U.S. at 116, 97 S.Ct. at 2254 (citation omitted).

The court in *Domina* drew the following distinction between the situation addressed by the *Biggers–Brathwaite* line of cases and an initial in-court identification:

> The concern with in-court identification, where there has been suggestive pretrial identification, is that the witness later identifies the person in court, not from his or her recollection of observations at the time of the crime charged, but from the suggestive pretrial identification. *United States v. Jarrad,* 754 F.2d 1451, 1455 (9th Cir.), *cert. denied,* [474] U.S. [830], 106 S.Ct. 96, 88 L.Ed.2d 78 (1985). Because the jurors are not present to observe the pretrial identification, they are not able to observe the witness making that initial identification. The certainty or hesitation of the witness when making the identification, the witness's facial expressions, voice inflection, body language, and the other normal observations one makes in everyday life when judging the reliability of a person's statements, are not available to the jury during this pretrial proceeding. There is a danger that the identification in court may only be a confirmation of the earlier identification, with much greater certainty expressed in court than initially. When the initial identification is in court, there are different considerations. The jury can observe the witness during the identification process and is able to evaluate the reliability of the initial identification. On the other hand, there can be little doubt that the initial in-court identification is suggestive.

*Domina,* 784 F.2d at 1368.

The court held that methods which might be used to lessen the suggestiveness of in-court identifications, such as in-court lineups or seating the defendant elsewhere in the room than at counsel table, could be requested by the defense and that such were within the discretion of the trial court. *Id.* at 1369. Similarly, the Seventh Circuit has held that "[g]enerally, the question of the suggestiveness or credibility of the in-court identification is to be resolved ultimately by the jury after the defendant has had an opportunity to test the accuracy of an identification through cross-examination." *United States*

*v. Davies,* 768 F.2d 893, 904 (7th Cir.) *cert. denied,* 474 U.S. 1008, 106 S.Ct. 533, 88 L.Ed.2d 464 (1985). Only when there is a "very substantial likelihood of irreparable misidentification" is the issue of the credibility of the identification not left to the jury to decide. *Id.* (quoting *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968)). Although not mentioned by the parties in their briefs, we note that the trial court included a jury instruction which emphasized that the jury should carefully scrutinize an in-court identification for its credibility and reliability. We find that the trial court did not err in maintaining identification as a jury issue under the facts of this case.

*United States v. Brown,* 920 F.2d 1212 (5th Cir.1991), *cert. denied,* 500 U.S. 925, 111 S.Ct. 2034, 114 L.Ed.2d 119 (1991), also cited by the government, does not involve an initial in-court identification. The trial court denied defendant's motion for such an identification and ordered the government to conduct an out-of-court lineup. *Id.* at 1214. The defendant was ordered to dye the gray portion of his hair black in order to match its color at the time of the robbery. The appellate court upheld the forced dyeing of the hair, relying on numerous citations for the general proposition that a defendant may be compelled to don clothing or other items for identification purposes. *Id.* at 1215. Apparently, the government cites *Brown* in this appeal in support of its position that having the defendant appear before the jury in the cap and dark glasses did not create a substantial likelihood of irreparable misidentification. Upon review of the record before us, we agree. The Court further notes that there was substantial other evidence of defendant's guilt presented at trial, including identification of the defendant by his own mother from a bank surveillance photograph. In such circumstances, as the *Domina* court noted, we are less likely to find abuse of discretion in permitting the in-court identification. 784 F.2d at 1369. This principle has also been applied by courts in the traditional *Biggers–Brathwaite* setting. *See e.g., United States v. Davila,* 964 F.2d 778, 782 (8th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 438, 121 L.Ed.2d 358 (1992), (in-court identification

harmless beyond a reasonable doubt given the overwhelming evidence of defendant's guilt). Accordingly, we reject the defendant's second contention on appeal.

■ Next, defendant objects to the testimony of two government witnesses, Rose Rice and William Delaney. Ms. Rice was defendant's parole officer for the State of Kansas at the time of the robberies. She was permitted, over defense objection, to testify to the fact of that relationship, to the fact that defendant had been released from prison on July 1, 1991, and that he had failed to appear for a scheduled meeting with her on August 28, 1991. She further testified that she had been contacted by the Wellsville Police Department after the robberies and had identified defendant from a bank surveillance photograph based upon his "long neck" and "distinctive Adam's apple." Also, she testified that the defendant drove a blue 1977 Dodge Colt during July and August of 1991. As stated, the defendant objected prior to Ms. Rice's testimony being offered, primarily on the ground that it was highly prejudicial to permit the jurors to hear that the defendant had been in prison previously and now had a parole officer. The government responded that the testimony concerning the missed parole meeting was necessary to rebut an anticipated alibi defense regarding the first robbery. Further, the prosecutor argued:

> Judge, we submit that the relevancy is obvious that he missed the meeting—a meeting for reasons that were extremely important to him, the inference of which he had robbed the bank for the first time.

(R.O.A., Vol. IV, at 405).

The term *non sequitur* is almost too weak to describe the logical connection offered by the government. The chasm between missing a meeting with one's parole officer and robbing a bank days earlier is too vast to be bridged under the Federal Rules of Evidence. Also, testimony of Ms. Rice's position as defendant's parole officer was unnecessary to rebut defendant's alibi defense. The trial court erred in admitting Ms. Rice's testimony as to her status as a parole officer and that the defendant had recently been released from prison. These matters were either irrele-

vant, or at most, more prejudicial than probative under Rule 403 F.R.Evid. Nevertheless, we conclude that the admission of the evidence was harmless error, because we are not persuaded that it "substantially influenced" the jury's verdict in the context of the entire case against the defendant. *United States v. Mejia–Alarcon,* 995 F.2d 982, 990 (10th Cir.) *cert. denied,* — U.S. —, 114 S.Ct. 334, 126 L.Ed.2d 279 (1993) (quoting *United States v. Short,* 947 F.2d 1445, 1455 (10th Cir.1991) *cert. denied,* — U.S. —, 112 S.Ct. 1680, 118 L.Ed.2d 397 (1992)). The trial court gave the jury a limiting instruction that evidence of other crimes should not be considered as guilt of the crime charged. There was abundant evidence introduced against the defendant which was sufficient for the conviction.

■ William Delaney, an FBI agent, was permitted to testify that he investigated an accident involving the stolen truck on September 6, 1991, and that a black tennis shoe matching one obtained from defendant's belongings at the hospital, was seized from the vehicle. (Inasmuch as defendant's mother had already turned over two black tennis shoes to authorities, apparently defendant owned more than one pair of this type of sneaker.) The record does not reflect any objection by the defendant to Agent Delaney's testimony or to the introduction of the tennis shoe. Again, the admission of this evidence appears dubious. It would seem to have served no useful purpose to introduce a cumulative second tennis shoe. The discussion of the stolen and wrecked truck was irrelevant and prejudicial. However, in the absence of objection, we do not find that the admission of the evidence rises to the level of plain error. *See United States v. Garcia,* 994 F.2d 1499, 1507 (10th Cir.1993).

■ Finally, defendant argues that the total effect of the trial court's rulings in this case constitute a "cumulative error" requiring reversal. It is true that the cumulative effect of two or more individually "harmless" errors may warrant reversal where the substantial rights of the defendant were affected. *United States v. Sanders,* 928 F.2d 940, 942 (10th Cir.) *cert. denied,* — U.S. —, 112 S.Ct. 142, 116 L.Ed.2d 109 (1991). Upon

review of the record, and in light of the properly-admitted evidence already discussed, the Court does not believe that the admissions of the Rice and Delancy testimony discussed above influenced the jury's verdict to the extent that defendant's substantial rights were affected.

Mr. Robertson's convictions are hereby affirmed.