UNITED STATES of America,
Plaintiff–Appellee,

v.

Murl Wayne MORRIS, a/k/a Raul Franklin, a/k/a Roger Ward Conway, a/k/a Merle Franklin, a/k/a Roger Ward, a/k/a Steve Mills, Defendant–Appellant.

No. 01–6025.

United States Court of Appeals,
Tenth Circuit.

April 23, 2002.

Joseph L. Wells, Oklahoma City, OK, for Defendant–Appellant.

Daniel G. Webber, Jr., Assistant U.S. Attorney (Robert G. McCampbell, United States Attorney, and David L. Walling, Assistant U.S. Attorney, with him on the brief), for Plaintiff–Appellee.

Before HENRY, McKAY, and GIBSON,* Circuit Judges.

McKAY, Circuit Judge.

This criminal appeal arises from an incident where an undercover FBI agent shot Defendant Murl Wayne Morris in the back while Mr. Morris attempted to flee arrest. After the shooting, Mr. Morris remained in intensive care for seven days under an around-the-clock security watch.

While Mr. Morris remained in the hospital, but no longer in the ICU, FBI agents secured a signed Miranda waiver from Mr. Morris and interviewed him. During that interview, Mr. Morris told the agents that a friend had informed him that the FBI was looking for him in connection with a Texas murder. Rec., Vol. III, at 255–56. Mr. Morris said that although he considered turning himself in, he decided not to because he had been incarcerated before and did not want to go back to prison. *Id.* at 256. Mr. Morris also verified that he purchased a .22 caliber pistol after he discovered that the FBI was looking for him. Mr. Morris filed a motion to suppress the statements he made in the FBI interview and, in the alternative, Mr. Morris also filed a motion in limine to prevent the submission of evidence that the FBI was looking for him in regard to a murder in the State of Texas and Mr. Morris' statement to a friend that he had been incarcer-

---

* Honorable John R. Gibson, Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

ated before and did not want to go back to prison.

In preparation for his defense, Mr. Morris requested a Rule 17(c) subpoena for all documents collected by the FBI during the course of its investigation. The subpoena included all documents relating to the FBI's investigation into Mr. Morris' shooting and the FBI undercover agent's personnel file.

Before trial, the district court rejected Mr. Morris' motion to suppress the statements he made in the FBI interview finding that Mr. Morris' Miranda waiver was knowingly and voluntarily given. The district court also overruled Mr. Morris' motion in limine. Finally, the district court quashed Mr. Morris' Rule 17(c) subpoena for all records regarding the FBI's investigation into Mr. Morris' shooting and the undercover agent's personnel file without reviewing the requested material in camera. Following a jury trial, Mr. Morris was convicted of assaulting the FBI undercover agent, using a firearm in relation to a crime of violence, being a felon in possession of a firearm, and attempting escape from lawful arrest for a felony offense.

The issues in this case are 1) whether the district court erred in failing to suppress the statement Mr. Morris gave to FBI agents in the hospital; 2) whether the district court erred in overruling Mr. Morris' motion in limine to prevent the introduction of evidence that he was wanted for murder and had purchased a gun because he did not want to go back to prison; 3) whether the district court erred in quashing Mr. Morris' Rule 17(c) subpoena; and 4) whether sufficient evidence was admitted to support Mr. Morris' conviction for attempted escape from custody and use of a dangerous weapon in forcibly assaulting a federal officer.

■ Mr. Morris first argues that the district court erred in failing to suppress his statement given to FBI agents while he was still in the hospital and taking a mild painkiller. The validity of a defendant's waiver of his or her Fifth Amendment rights is reviewed de novo with the underlying facts reviewed under the clearly erroneous standard. *See United States v. Bautista*, 145 F.3d 1140, 1149 (10th Cir. 1998); *United States v. Robertson*, 19 F.3d 1318, 1321 (10th Cir.1994).

■ Waiver of one's Fifth Amendment privilege against self-incrimination requires that the individual "voluntarily, knowingly and intelligently" waive his constitutional privilege. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Supreme Court has described this standard as incorporating two distinct requirements:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Colorado v. Spring*, 479 U.S. 564, 573, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987) (quoting *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)) (internal quotation marks and citations omitted).

■ While Mr. Morris concedes that his statement was not overtly coerced, his argument could be read to challenge the voluntariness of his waiver. More particularly, Mr. Morris suggests that the environment created by the FBI surrounding

his interrogation—including the fact that he had been shot twice, that he had been on heavy pain medication immediately after the shooting, and that he had little contact with the outside world while in the hospital—may have been implicitly or unintentionally coercive. Such an argument is not borne out by common sense, however, as there is no evidence of FBI misconduct here. *Cf. Colorado v. Connelly,* 479 U.S. 157, 167–70, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) ("coercive [government] activity is a necessary predicate to the finding that a confession is not 'voluntary' "). Further, that ten days passed between the shooting and the interrogation and that Mr. Morris was told to focus on recovering before speaking with the FBI shows great caution on the part of the FBI to avoid any coercive effects. While the government is required to show the voluntariness of waiver by a preponderance of the evidence, *see United States v. Gell–Iren,* 146 F.3d 827, 830 (10th Cir.1998), the evidence here overwhelmingly shows a lack of any government coercion, either intentional or unintentional.

The focus of Mr. Morris' argument is that the waiver of his rights was not knowingly and intelligently made. It is worth repeating that "the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Spring,* 479 U.S. at 573, 107 S.Ct. 851 (quoting *Moran,* 475 U.S. at 421, 106 S.Ct. 1135). No doubt a defendant's mental capacity—as affected by pain, the effects of pain medications, and the post-traumatic stress of being shot—is relevant to whether or not a person could have

understood both the nature of the right being abandoned and the consequences of the decision to abandon it.[1] Here, however, the FBI agents consulted with Mr. Morris' physician prior to obtaining the waiver and verified that the painkiller Mr. Morris was taking, Lortab, would not affect his mental faculties. Mr. Morris signed the waiver, was promised nothing, was alert and responsive during the interview, and demonstrated that he understood his right to remain silent by refusing to provide a written statement following the interview. Mr. Morris was also coherent in previous conversations with the agents guarding the room.

In sum, Mr. Morris was not mentally impaired, was fully aware of the nature of the Fifth Amendment right being abandoned, and was aware of the consequences of that decision. *Cf. United States v. Hack,* 782 F.2d 862, 866 (10th Cir.1986) (finding a valid waiver where the defendant's treating physician had prescribed mild pain medication, there was no evidence of coercion, and the defendant—who had been shot prior to being taken into custody—appeared to be mentally alert at the time of the waiver). For these reasons, we hold that the content of Mr. Morris' statement was properly admitted.

▮ The second issue is whether the district court erred in overruling Mr. Morris' motion in limine to prevent the introduction of evidence concerning the crime for which Mr. Morris was being pursued when he was shot and his statement that he did not want to be incarcerated again. Admission of evidence under Federal Rule of Evidence 404(b) is reviewed under an

---

1. In *Robertson,* we held that a defendant's mental state absent police overreaching goes to the weight of the evidence rather than admissibility. *See* 19 F.3d at 1322. *Robertson* concerned the *voluntariness* prong of the waiver analysis, however, and there was no

evidence of government coercion in that case. Thus, *Robertson* does not apply where there is evidence of government coercion with respect to the voluntariness analysis or where the defendant challenges whether the waiver was knowingly and intelligently made.

abuse of discretion standard. *United States v. Roberts,* 185 F.3d 1125, 1141 (10th Cir.1999).

In his statement to FBI agents at the hospital, Mr. Morris said that a friend told him that the FBI was looking for him in connection with a murder in Texas. Rec., Vol. III, at 256. Mr. Morris also stated that he had considered turning himself in but decided not to because he had been incarcerated before and did not want to go back to prison. He told the agents that upon receipt of this information he had purchased a .22 caliber. The district court admitted this evidence pursuant to Rule 404(b) finding that it was "highly relevant and very probative of this Defendant's motive to carry a gun and to escape from arrest." Rec., Vol. II, at 105.

■ Federal Rule of Evidence 404(b), governing the admission of "other crimes, wrongs, or acts" provides that while such evidence is not admissible to prove the character of the accused, it is admissible for other purposes such as proof of motive. When making a Rule 404(b) determination of admissibility of evidence, we require:

(1) evidence of other crimes, wrongs, or acts must be introduced for a proper purpose; (2) the evidence must be relevant; (3) the court must make a Rule 403 determination whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) the court, upon request, must instruct the jury that the evidence of similar acts is to be considered only for the limited purpose for which it was admitted.

*United States v. Viefhaus,* 168 F.3d 392, 397 (10th Cir.1999).

■ The facts in this case are similar to *United States v. Peltier,* 585 F.2d 314 (8th Cir.1978). In *Peltier,* the defendant was charged with the murder of two FBI

agents. The defendant stipulated that he was aware at the time of the agents' deaths that an outstanding arrest warrant was out for him on attempted murder. On appeal, the court found that evidence of the warrant for attempted murder was properly admitted to prove motive "because it tended to show why [the defendant] reacted with deadly force when followed by the F.B.I. agents." *Id.* at 321. Similarly, in our case, Mr. Morris stated that he was aware of the outstanding arrest warrant for him for a murder in Texas. This evidence was highly probative of Mr. Morris' motive to flee arrest and to use deadly force in order to avoid being apprehended.

We are especially sensitive to this type of potentially highly prejudicial evidence. We require a strong nexus between the evidence and the reason for which it is offered. Mr. Morris purchased a gun and was attempting to flee arrest because he knew specifically that a murder warrant was outstanding. Mr. Morris stated in his interview that he had purchased a gun because he had learned of the murder warrant and that he did not want to be incarcerated again.

Additionally, the district court took precautions to limit the prejudicial nature of the evidence. References to the outstanding murder warrant were limited, no details of the murder were given to the jury, and the jury was warned that Mr. Morris was presumed innocent of the murder charge. Because the evidence was highly probative of Mr. Morris' motive to flee arrest and possibly use deadly force in order to avoid arrest, the district court correctly allowed its admission. We hold that in this case there is a strong nexus between the outstanding murder warrant and Mr. Morris' motive to carry a gun and to flee from arrest. The district court did

not err in overruling Mr. Morris' motion in limine.

■■■ The third issue is whether the district court erred in quashing Mr. Morris' Rule 17(c) subpoena and whether the district court erred in refusing to conduct an in camera inspection of the requested materials. The suppression of Mr. Morris' pre-trial subpoena is subject to an abuse of discretion standard. *United States v. Gonzalez–Acosta*, 989 F.2d 384, 388 (10th Cir.1993). "[W]e will not disturb the district court's ruling unless we have 'a definite and firm conviction' that the court 'made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'" *Id.* at 389 (citation omitted). A party seeking a subpoena duces tecum pursuant to Rule 17(c) must show:

(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*United States v. Nixon*, 418 U.S. 683, 699–700, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). In order to meet this burden, Mr. Morris "must clear three hurdles: (1) relevancy; (2) admissibility; [and] (3) specificity." *Id.* at 700, 94 S.Ct. 3090.

■■■ While the information Mr. Morris sought through his Rule 17(c) subpoena appears highly relevant and is arguably admissible, his request does not meet the specificity requirement set forth in *Nixon*. *Nixon* mandates that the party requesting the information identify the item sought and what the item contains, among other things. Mr. Morris' subpoena references all records, documents, reports, telephone logs, etc., surrounding the investigation into the FBI undercover agent's shooting of Mr. Morris and the agent's entire personnel file.

Not only is Mr. Morris unable to specify what the items he requests contain, he is also unable to verify whether the requested material even exists. For example, at the hearing on the Government's Motion to Quash, defense counsel stated, "That's the kind of things I suspect are there," and "[t]hat is why we would like to get the personnel record to see if there are prior instances where [the undercover agent] acted aggressively…." Rec., Vol. II, at 94–95.

Courts have held that requests for an entire file are evidence of an impermissible fishing expedition. *United States v. Reed*, 726 F.2d 570, 577 (9th Cir.1984); *United States v. Hughes*, 931 F.2d 63, 1991 WL 59383, at *1 (10th Cir.1991). It appears that defense counsel attempted to use the Rule 17(c) subpoena for impermissible discovery purposes. Mr. Morris' Rule 17(c) subpoena did not overcome the hurdle of specificity as required by *Nixon*.

■■■ Furthermore, the district court did not err in refusing to conduct an in camera inspection of the requested materials. Because the district court found that Mr. Morris' subpoena lacked specificity and constituted an impermissible fishing expedition, the court was not required to conduct an in camera review. *United States v. Arditti*, 955 F.2d 331, 347–48 (5th Cir.1992) (Goldberg, J., concurring).

■■■ The final issue is whether sufficient evidence was admitted to support Mr. Morris' conviction for attempted escape from custody and use of a dangerous weapon to forcibly assault a federal officer. Sufficiency of evidence to support a verdict is reviewed de novo. *United States v.*

*Wiseman,* 172 F.3d 1196, 1212 (10th Cir. 1999). The evidence is reviewed in a light most favorable to the prosecution to determine if *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original). We hold that even though only one witness testified that Mr. Morris was advised that he was under arrest and that he pointed a gun at the FBI undercover agent, taken in a light most favorable to the Government, this was sufficient to support his convictions.

For the foregoing reasons, the decision of the district court is **AFFIRMED.**