FILED
United States Court of Appeals
Tenth Circuit

July 11, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

CHASE WEBB BURSON,

        Defendant-Appellant.

No. 07-2197

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. CR-06-252-JH)**

---

Zachary A. Ives (Theresa M. Duncan with him on the briefs), Freedman Boyd Hollander Goldberg & Ives P.A., Albuquerque, New Mexico.

Gregory J. Fouratt, United States Attorney (Terri J. Abernathy, Assistant United States Attorney, with him on the brief), Office of the United States Attorney, Las Cruces, New Mexico.

---

Before **HENRY**, Chief Judge, **BALDOCK**, and **TYMKOVICH**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

Chase Webb Burson was arrested for drug and firearm offenses at a time he claimed he was high on methamphetamine. After receiving a *Miranda* warning and spending a few hours in jail, Burson insisted on talking to the arresting

officer. The officer reminded Burson of his rights before asking any questions. Burson then voluntarily participated in a nineteen-minute interview with the officer and made a number of incriminating statements.

Burson now appeals the district court's denial of his motion to suppress the statements he made immediately at the time of his arrest and during the later interview. Burson argues he was too tired and intoxicated to knowingly and intelligently waive his rights. We disagree. The testimony of the arresting officer and a videotape of the interview show Burson knowingly and intelligently waived his *Miranda* rights before making any statements to the officer. The district court therefore correctly denied Burson's motion to suppress.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we AFFIRM.

## I. Background

Burson was convicted in federal court of three counts: possession with intent to distribute methamphetamine and possession with intent to distribute cocaine, both in violation of 21 U.S.C. § 841, and carrying a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c). He is serving a total sentence of 180 months imprisonment.

At approximately 2:00 a.m. on March 8, 2005, Officer Keith McPheeters noticed an expired license plate on a car parked at a convenience store in his patrol zone. By running the license plate number through his computer, McPheeters learned the car's owner had an outstanding arrest warrant. When

McPheeters saw Burson exit the convenience store and get into the car, he approached the car and asked Burson for identification. Through the car's open window, McPheeters spotted a baggie of what appeared to be methamphetamine on the driver's side floorboard. McPheeters ordered Burson out of the car, advised him of his *Miranda* rights, and asked him if he had any questions about those rights. Burson said he understood his rights. Then, in response to McPheeters's question about whether the baggie contained methamphetamine, Burson responded affirmatively. McPheeters arrested him for possessing the methamphetamine.

After arresting Burson, McPheeters began an inventory search of the car. He saw a handgun directly underneath the driver's seat and a baggie of what he believed to be cocaine in a gap in the car's center console. Burson acknowledged the bag contained cocaine. Upon removing the bag of cocaine from the console, McPheeters discovered a larger bag of methamphetamine behind it.

A little while after Burson was booked into the police station, at approximately 3:45 a.m., he requested to speak with McPheeters. When McPheeters asked Burson whether he remembered his *Miranda* rights, Burson said he did and nevertheless wanted to talk about his case. During an interview that lasted less than 20 minutes, Burson made further incriminating statements concerning the gun and drugs McPheeters had found in the car. Although McPheeters thought Burson was probably at least partially under the influence of

methamphetamine, he also concluded Burson was not confused or incoherent, and responded appropriately to his questions. McPheeters later stated Burson was "very cognitive" during the interview.

Before trial, Burson moved to suppress all the incriminating statements he made to McPheeters. He argued his waiver of *Miranda* rights was not knowingly and intelligently given, because he was exhausted and under the influence of drugs. The district court denied the motion, concluding Burson voluntarily, knowingly, and intelligently waived his rights before responding to McPheeters at the scene of his arrest and before his interview with McPheeters at the police station.[1] We agree.

## II. Discussion

*A. Standard of Review*

When reviewing the district court's denial of a motion to suppress, we consider the evidence in the light most favorable to the prevailing party below—in this case, the government. *United States v. Jones*, 523 F.3d 1235, 1239 (10th Cir. 2008); *United States v. Alexander*, 447 F.3d 1290, 1293 (10th Cir. 2006). The district court's factual findings are reviewed for clear error only. *United States v. Curtis*, 344 F.3d 1057, 1066 (10th Cir. 2003); *United States v.*

---

[1] We disagree with Burson's characterization of the district court's decision as discussing only the "voluntary" element of the waiver test, to the exclusion of the "knowing and intelligent" elements. Although the district court's order uses the term voluntary throughout, it is clear from the context the court understood and applied the entire tripartite standard.

*Morris*, 287 F.3d 985, 988 (10th Cir. 2002). "A finding is clearly erroneous only if no factual support can be found in the record or if it is obvious to this court that an error has occurred." *Alexander*, 447 F.3d at 1293–94.

Whether a defendant voluntarily, knowingly, and intelligently waived his *Miranda* rights before making statements to police is a legal conclusion we review *de novo*. *Curtis*, 344 F.3d at 1066 ("The ultimate issue of whether a statement was voluntary is a question of law which we review *de novo*."); *Morris*, 287 F.3d at 988 ("The validity of a defendant's waiver of his or her Fifth Amendment rights is reviewed *de novo* with the underlying facts reviewed under the clearly erroneous standard.").

*B. Legal Framework*

It is a bedrock principle that the waiver of one's Fifth Amendment privilege against self-incrimination must be made "voluntarily, knowingly and intelligently." *Morris*, 287 F.3d at 988 (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). Whether this standard is met "depends in each case upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Maynard v. Boone*, 468 F.3d 665, 676 (10th Cir. 2006) (quoting *Edwards v. Arizona*, 451 U.S. 477, 482 (1981)) (discussing waiver of Sixth Amendment right to counsel). The government has the burden of proving a valid waiver by a preponderance of the evidence. *Morris*, 287 F.3d at 989. In this case, Burson challenges the final two

prongs of the waiver test, contending that his waiver of rights was not knowingly and intelligently given because of exhaustion and drug use.

In determining whether a waiver of rights was knowing and intelligent, we employ a totality of the circumstances approach. *See Colorado v. Spring*, 479 U.S. 564, 573 (1987) (holding a Fifth Amendment waiver is valid if the "totality of the circumstances . . . reveal both an uncoerced choice and the requisite level of comprehension"); *Smith v. Mullin*, 379 F.3d 919, 932–33 (10th Cir. 2004) ("Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." (quotation omitted)). We examine the entire record to determine whether the defendant evidenced sufficient awareness and understanding for us to conclude his waiver of rights was knowingly and intelligently made. *Smith*, 379 F.3d at 933–34; *see also Curtis*, 344 F.3d at 1066; *Morris*, 287 F.3d at 989.

A waiver is made knowingly and intelligently when made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Morris*, 287 F.3d at 988 (quoting *Spring*, 479 U.S. at 573); *accord United States v. Doe*, 155 F.3d 1070, 1075 (9th Cir. 1998); *United States v. Barbour*, 70 F.3d 580, 585 (11th Cir. 1995); *United States v. Yunis*, 859 F.2d 953, 966 (D.C. Cir. 1988). "The purpose of the 'knowing and voluntary' inquiry . . . is to determine whether the defendant actually does understand the

significance and consequences of a particular decision and whether the decision is uncoerced." *Godinez v. Moran*, 509 U.S. 389, 401 (1993). When a defendant waives his constitutional rights, he must be "made aware of the dangers and disadvantages . . . so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta v. California*, 422 U.S. 806, 835 (1975).

Several recent cases in our circuit shed light on what the "full awareness" standard means in the context of defendants waiving their rights while under the influence of drugs or otherwise impaired. The first case involved a defendant who had used both drugs and alcohol prior to making statements to the police. In that case, *United States v. Curtis*, 344 F.3d 1057 (10th Cir. 2003), we found a valid waiver where the defendant was under the influence of marijuana, crack cocaine, and alcohol consumed earlier in the day; he looked "a little punchy"; he laid his head on the table; he closed his eyes at times; and his eyes were bloodshot. After reviewing the entire record, we nevertheless determined the defendant had knowingly and intelligently waived his rights. *Id.* at 1066. In reaching this conclusion, we relied particularly on the testimony of the arresting officer that the defendant was calm, cool, and able to answer questions, and appeared to be operating under his own free will. *Id.* Importantly, the defendant failed to put forth evidence sufficient to overcome that uncontroverted, credible officer testimony.

Similarly, in *United States v. Morris*, 287 F.3d 985 (10th Cir. 2002), we concluded the defendant, although in the hospital recovering from gunshot wounds, had nevertheless knowingly and intelligently waived his *Miranda* rights. We acknowledged the defendant's mental capacity was affected by pain, the effects of pain medication administered at the hospital, and the posttraumatic stress of being shot in the back multiple times. *Id.* at 989. Nevertheless, looking at the totality of the circumstances, we concluded the defendant had knowingly and intelligently waived his rights because he was "alert and responsive during the interview," "coherent in previous conversations with the agents guarding the room," and "demonstrated that he understood his right to remain silent." *Id.* The defendant's arguments to the contrary were belied by the officers' testimony and other record evidence.

Taken together, these cases reveal a defendant must be impaired to a substantial degree to overcome his ability to knowingly and intelligently waive his privilege against self-incrimination. *See Smith*, 379 F.3d at 932; *Curtis*, 344 F.3d at 1066; *Morris*, 287 F.3d at 989. Where the government puts forth evidence showing the defendant was sufficiently in touch with reality so that he knew his rights and the consequences of abandoning them, the defendant must point to facts sufficient to overcome that showing. The mere fact of drug or alcohol use will not suffice. The defendant must produce evidence showing his condition was

such that it rose to the level of substantial impairment.[2]  Only then could we conclude the government has failed to prove the defendant possessed full awareness of both the nature of his rights and the consequences of waiving them.

With these principles in mind, we turn to Burson's arguments that he lacked full awareness.

*C.  Application*

Burson argues his statements to McPheeters should be suppressed because he was substantially impaired based on a number of factors.  Burson points to: (1) the timing of the *Miranda* warning, (2) his drug use during the day of the interview, (3) his inability to engage in a dialogue, and (4) his exhaustion at the

---

[2]  Our high standard for showing impairment vitiating full awareness is consistent with the standards used in both federal and state courts.  *See generally* George L. Blum, "Sufficiency of Showing that Voluntariness of Confession or Admission Was Affected by Alcohol or Other Drugs—Self-Intoxication," 9 A.L.R. 6th 1 (2005).  In some federal courts, for example, the standard is defined by asking whether the defendant was impaired to the point he was incapable of rational decision-making.  *E.g.*, *United States v. Cristobal*, 293 F.3d 134, 142 (4th Cir. 2002) (upholding waiver where defendant had failed to show narcotics and pain "rendered him incapable of making an informed decision or incapable of thinking rationally"); *see also United States v. Annis*, 446 F.3d 852, 856 (8th Cir. 2006); *Doe*, 155 F.3d at 1075; *Barbour*, 70 F.3d at 585–86.

Similarly, in many state courts, the defendant can show he was incapable of knowingly and intelligently waiving his rights only by showing he was impaired to the extent of "mania."  *E.g.*, *Brooks v. Indiana*, 683 N.E.2d 574, 576 (Ind. 1997) ("A defendant's statement will be deemed incompetent only when he is so intoxicated that it renders him not conscious of what he is doing or produces a state of mania."); *see also New York v. O'Keefe*, 594 N.Y.S.2d 265, 266 (N.Y. App. Div. 1993); *Fuller v. Alabama*, 620 So. 2d 669, 672 (Ala. Crim. App. 1991); *Thomas v. Florida*, 456 So. 2d 454, 458 (Fla. 1984).

time of the interview.[3]  We engage in a totality of the circumstances approach, where no single factor—whether intoxication, exhaustion, or other—is dispositive.  *See United States v. Arvizu*, 534 U.S. 266, 274 (2002).  Considering all the facts, we conclude Burson has failed to overcome the government's evidence he possessed the requisite level of understanding and comprehension to knowingly and intelligently waive his rights.  That is, the government has proved a valid waiver by the preponderance of the evidence.  The testimony of Officer McPheeters, coupled with a videotape of the interview, make clear Burson understood the nature of his *Miranda* rights and the consequences of waiving them.

At the suppression hearing, Officer McPheeters testified he thought Burson was both physically and mentally in command of himself at the time of his arrest and throughout the police station interview.[4]  McPheeters stated Burson did not

[3]  More specifically, Burson states: (1) he was under the influence of methamphetamine; (2) he had used both methamphetamine and cocaine heavily before his arrest; (3) he had not slept for days; (4) he could not quickly remember what day of the week it was; (5) McPheeters had to tell him to "stay on target," "focus," and the like; (6) he rested his head on the table at various times; and (7) he failed to respond to some questions and responded to others with a moan. Aplt. Br. 18–19.  In addition to describing his physical and mental condition, Burson adds that McPheeters did not re-advise him of his *Miranda* rights before conducting the interview at the police station.  *Id.* at 20–21.

[4]  Burson also testified at the suppression hearing.  Although Burson indicated he was too tired and intoxicated to validly waive his rights, the district court credited Officer McPheeters's testimony to the contrary.  We will not disturb this credibility determination on appeal.  *See, e.g.*, *Wessel v. City of*

(continued...)

appear confused by his questions and was "very cognitive." Joint App'x (J.A.) at 62–63. Although McPheeters thought Burson had probably used drugs earlier in the day, he did not think Burson was incoherent, intoxicated, or otherwise substantially impaired. *Id.* at 63, 79. In fact, McPheeters noted that at the time of the arrest, Burson had coherently answered McPheeters's questions, told McPheeters how to get into the car's console to find the drugs hidden there, and candidly admitted his handgun was "for protection." *Id.* at 47, 50–51, 67. All of these facts indicate Burson understood the situation he was in and the consequences of his actions. And they are plainly inconsistent with a lack of awareness of the consequences of his statements.

Burson points to a videotape of the interview to argue the district court clearly erred in concluding he was not substantially impaired. But the videotape actually reinforces McPheeters's testimony that Burson was capable of knowingly and intelligently waiving his rights. *Cf. Scott v. Harris*, __ U.S. __, 127 S. Ct. 1769, 1775–76 (2007) (relying upon videotape to determine facts contrary to non-movant's theory at summary judgment stage). Although Burson looks tired and resigned on the tape, his mental state appears sound. In fact, the videotape rebuts all four of Burson's arguments against a knowing and intelligent waiver.

_____

[4](...continued)
*Albuquerque*, 463 F.3d 1138, 1145 (10th Cir. 2006) ("We give the district court's determinations regarding the credibility of witnesses great deference." (quoting *Dill v. City of Edmond*, 155 F.3d 1193, 1211 n.9 (10th Cir. 1998))).

-11-

First, even though Burson was not given a another complete *Miranda* warning before the videotaped conversation with McPheeters, he was reminded of his rights. Burson initiated the interview, and before any questioning began, McPheeters asked Burson if he remembered the *Miranda* warning he was given at the time of his arrest, less than two hours earlier. Burson responded affirmatively. *See* J.A. at 150, Videotape at 3:45–46 a.m. (Burson acknowledging he remembered his *Miranda* rights).

In fact, McPheeters asked Burson if he recalled his rights in three different ways. He was not satisfied when Burson at first mumbled an affirmative answer, and waited until he heard Burson acknowledge he did not have any questions or concerns regarding his rights. Videotape at 3:46 a.m. This is powerful evidence Burson was aware of his rights and cuts against any claim he did not knowingly and intelligently waive those rights. *See, e.g.*, *Mitchell v. Gibson*, 262 F.3d 1036, 1057 (10th Cir. 2001); *see also Wyrick v. Fields*, 459 U.S. 42, 47 (1982); *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). Because Burson had been arrested on prior occasions, we have even more reason to believe he knew his constitutional rights before consenting to waive them.

Second, although Burson argues he suffered from exhaustion, his demeanor at the police station could be more accurately described as resigned than exhausted. He had been arrested less than two hours earlier for possessing sizable quantities of methamphetamine and cocaine, as well as a loaded firearm. At the

-12-

time of his arrest, he told Officer McPheeters repeatedly, "I can't be charged," perhaps worried about the lengthy sentence he faced as a repeat offender. When asked about his criminal background at the police station, Burson admitted he had a pending drug charge against him. Videotape at 3:57 a.m. (Burson stating he had no prior convictions, but a pending drug charge).

At the time of the interview, Burson did not say anything to McPheeters about being exhausted. He described his physical state by saying simply, "I'm just nervous, jittery, got so much going on right now." Videotape at 3:46 a.m. Although the interview was conducted late at night, Burson initiated the encounter and at no point told McPheeters he was too tired to continue. In sum, there is simply no evidence Burson was exhausted to the point he did not have "a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *See Morris*, 287 F.3d at 988.

Third, Burson's mental faculties were sufficient for him to engage in an intelligent, rational dialogue with McPheeters. Although he mumbled at certain points, Burson did not give unrealistic or delusional answers to McPheeters's questions. *See Smith*, 379 F.3d at 933 (upholding waiver despite defendant's mental retardation which gave him the understanding of a twelve-year-old). As the district court noted, Burson's answers were logical and rational. At several points, Burson remembered specific details, including what he had done earlier in the night. Videotape at 3:53 a.m. (Burson stating he picked up his car at six

-13-

o'clock that night from Quality Tire, where the exhaust was being repaired).  He

also recalled the exact quantity of drugs he had in the car.  *Id.* at 3:54–55 a.m.

(Burson accurately stating he possessed three-quarters of an ounce of cocaine,

four ounces of methamphetamine "glass," and a personal use amount).

Throughout the interview, Burson appeared to have full awareness of his

statements and a genuine desire to give helpful information to the officer.  He was

obviously trying to answer all of the questions to the best of his knowledge.

Finally, while Burson complains he was under the influence of drugs, he

does not explain how that affected his knowing and intelligent waiver of rights.

The mere fact of drug use does not render a defendant incapable of waiving his

rights.  *Cf. United States v. Muniz*, 1 F.3d 1018, 1022 (10th Cir. 1993) ("The state

of intoxication does not automatically render a statement involuntary."); *United

States v. Annis*, 446 F.3d 852, 856 (8th Cir. 2006) ("This court, though, has

declined to adopt a per se rule of involuntariness founded solely on

intoxication.").  Even if Burson were under the influence of drugs, no evidence

was presented concerning how large a quantity Burson had taken in the time

leading up to his arrest and subsequent interview.  Nor do we know whether the

amount he used was unusual for him.  Burson conceded at the suppression hearing

being under the influence of drugs was a normal state for him and that he had

been a methamphetamine addict for many years.  J.A. at 112 (Burson stating he

-14-

was 24 years old and had been using methamphetamine "on a pretty much regular basis since I was 17 or 18").

After the government offered evidence sufficient to show Burson was aware of his rights and the consequences of waiving them, Burson was obliged to demonstrate how the amount of drugs he ingested overcame that awareness and understanding. Burson has failed to do so. Even if Burson were somewhat impaired by his earlier methamphetamine use, that would not be enough to overcome the government's considerable evidence—in the form of the videotape and Officer McPheeters's testimony—that Burson's waiver was made knowingly and intelligently. *See, e.g.*, *Muniz*, 1 F.3d at 1022 (upholding waiver despite evidence defendant was drunk, and had a blood-alcohol level of .268); *Curtis*, 344 F.3d at 1066 (upholding wavier despite evidence defendant used marijuana, crack cocaine, and alcohol earlier in the day).

* * *

After reviewing the entire record, we conclude, under the totality of the circumstances, Burson knowingly and intelligently waived his *Miranda* rights before making incriminating statements to Officer McPheeters. Those statements were properly admitted into evidence.[5]

---

[5] In the alternative, we would conclude any error in the admission of Burson's statements into evidence was harmless. *See Arizona v. Fulminante*, 499 U.S. 279, 310–11 (1991). Burson's statements merely corroborated Officer McPheeters's own testimony regarding the drugs and firearm he discovered in

(continued...)

-15-

## III. Conclusion

For the reasons set forth above, we AFFIRM.

---

[5](...continued)
plain view in Burson's car.  We do not reach this harmless error analysis, however, because the government did not raise harmless error and we decline to do so *sua sponte*.  *See, e.g.*, *Mollett v. Mullin*, 348 F.3d 902, 920–22 (10th Cir. 2003); *United States v. Torrez-Ortega*, 184 F.3d 1128, 1136–37 (10th Cir. 1999).