**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 1, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

CAMI BRADEN,

      Defendant-Appellant.

No. 10-8109
(D.C. No. 1:09-CR-00354-WFD-4)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **GORSUCH**, **ANDERSON**, and **MATHESON**, Circuit Judges.

A jury found Cami Braden guilty of participating in a conspiracy to obtain methamphetamine from suppliers in Utah and transport it to Wyoming for resale. To prove her involvement in that scheme, the government at trial presented testimony from Ms. Braden's co-conspirators as well as her own confession. This evidence revealed that Ms. Braden not only made regular trips to Utah to obtain methamphetamine from her suppliers, but also that she arranged for several of her co-defendants to do the same. Ms. Braden now appeals her conviction, advancing a number of reasons for reversal.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

1. We begin with Ms. Braden's claim that she was under the influence of methamphetamine when she made her post-arrest confession to police. This means, she says, that any waiver of her Fifth Amendment rights was not knowing, intelligent, or voluntary and that her confession should have been suppressed. The difficulty is, the mere fact a suspect has consumed drugs or alcohol prior to interrogation does not *automatically* render her waiver invalid under our controlling precedent. *See United States v. Burson*, 531 F.3d 1254, 1258 (10th Cir. 2008). Instead, a court must look to the totality of the circumstances and ask whether the waiver was made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id*. at 1257 (quotation omitted).

In this case, the district court's factual findings, made after a pretrial suppression hearing, are more than sufficient to show Ms. Braden had the requisite awareness. The district court found that, though Ms. Braden told the interrogating officers she had used methamphetamine eight to ten hours earlier, she denied that she was under the influence of the drug at the time of her interrogation. The district court also found that Ms. Braden was calm, lucid, well-spoken, and responded appropriately to questions throughout the interview. Understandably, her later ability to recall many details about the interrogation also suggested to the district court a lack of significant mental impairment at the time of the confession.

To this, Ms. Braden responds that the district court got the facts wrong. She paints a very different picture of what happened, relying on her own (and her mother's) testimony. But we review the district court's factual findings only for clear error, and in this case the district court's findings are amply supported by the testimony of the officers who conducted the interview. The judge concluded that this testimony was the more credible, and that determination is left to the district court, not to us. *See United States v. Alexander*, 447 F.3d 1290, 1294 (10th Cir. 2006).

2. Next, Ms. Braden points to three places where, she believes, the district court committed evidentiary error by admitting testimony against her. Her failure to object at trial, however, means that we may review only for plain error. Because any prejudice flowing from the challenged testimony was relatively slight and the remaining evidence against Ms. Braden was overwhelming, we cannot say that the putative errors she identifies rise to the level of plain error.

First, she claims that the arresting officer struck her with what she terms "evidentiary harpoons" by deliberately introducing inadmissible testimony. By way of example, she cites the fact that, when asked to describe how law enforcement located her, the arresting officer testified that a fellow officer immediately identified her when she opened a door because he "had dealt with her before." Aplt. App. vol. III at 722. We can understand how a statement like this might give rise to an inference that she had a criminal past. But such inference is

attenuated at best, especially given the brevity of the remark and the absence of any effort by the prosecution to make the inferential connection more explicit. Besides, the testimony was responsive to a legitimate line of inquiry into how law enforcement identified her. Given all this, we cannot say the district court plainly erred in admitting the testimony.

Second, Ms. Braden says, the district court should not have admitted certain out-of-court statements by co-conspirators without holding a Fed. R. Evid. 801(d)(2)(E) hearing.[1] But most of the statements she points to are offhand comments by witnesses that simply provide context for admissible testimony about those witnesses' actions. They do not go to the core of the conspiracy or Ms. Braden's involvement with it and we can see no plain error in their admission.

Perhaps the only challenged statement that might have harmed Ms. Braden in the eyes of the jury came when her supplier, Kenneth Souza, said that he knew some of the methamphetamine he provided to Jody Clawson, another co-conspirator, was intended to end up in the hands of Ms. Braden. Mr. Souza, however, said he knew this because of "conversations between us three." Aplt. App. vol. III at 468. To the extent this suggests Mr. Souza received the

---

[1] Although Ms. Braden did object below to the introduction of hearsay statements by co-conspirators generally, the government disclaimed any intention of introducing such statements and Ms. Braden never asserted at trial (or when given the opportunity after trial) that the particular challenged statements were hearsay. Plain error review is therefore appropriate.

- 4 -

information from Ms. Braden herself, the testimony was perfectly proper as a party admission. Neither, in any event, is there anything in the record plainly indicating otherwise.

Third, Ms. Braden argues that the prosecutor impermissibly elicited direct examination testimony through leading questions. But she does little to explain how any of the challenged questions prejudiced her. And it is clear enough that, had she objected, the prosecution could easily have rephrased its questions to elicit the same answer. *See United States v. Durham*, 645 F.3d 883, 891 (7th Cir. 2011).

Neither is this a marginal case where comparatively modest evidentiary errors like those alleged here might accumulate to undermine confidence in the verdict. The government presented testimony from no fewer than six of Ms. Braden's co-conspirators explaining her deep and substantial involvement with the conspiracy. And of course, Ms. Braden's confession admitting to her role in the distribution scheme contributed significantly to the evidence against her. In light of the weight of the unchallenged evidence against her, we simply cannot see how any or all of the ostensible errors Ms. Braden identifies could have had a "substantial influence on the outcome of the trial." *United States v. Collins*, 575 F.3d 1069, 1073 (10th Cir. 2009) (quotation omitted).

3. Finally, Ms. Braden challenges the district court's calculation of the amount of methamphetamine attributable to her for purposes of the Sentencing

Guidelines.  She claims that she was responsible for distribution of just .5 to 1.5 kilograms and not, as the district court found, 1.5 to 5 kilograms.  But there are many problems with this argument, including the fact that it fails to account for the court's ability to attribute to Ms. Braden any reasonably foreseeable drug trafficking by her co-conspirators in furtherance of the conspiracy.  U.S.S.G. § 1B1.3(a)(1)(B).  And the fact that it fails to take account of her own confession showing that she *personally* trafficked more than 1.5 kilograms.[2]

Ms. Braden replies that, even if its ultimate decision was not substantively unreasonable, the district court erred as a matter of procedure by rotely adopting the pre-sentence report's findings on drug quantity.  But the record reveals the court did no such thing.  Instead, the court listened to the defendant's objections, took a recess to consider them, and then (and only then) found that the probation department "has properly calculated the amount of drugs attributable to this defendant in this conspiracy and, if anything, gave Ms. Braden the benefit of the doubt."  Aplt. App. vol. III at 901.  There is nothing legally problematic in that procedure.  *Cf. United States v. Farnsworth*, 92 F.3d 1001, 1011 (10th Cir. 1996).

---

[2]  In her confession, Ms. Braden admitted receiving half an ounce of methamphetamine every three to four days between April 2008 and November 2009, and that (rounding in her favor) comes out to roughly 1.94 kilograms. There are 551 days from April 30, 2008, to November 1, 2009.  If she took a trip every four days, that would be 137.75 trips (call it 137).  At a half ounce per trip, that's 68.5 ounces.  Dividing that by 35.27, the number of ounces in a kilogram, comes out to about 1.94 kilograms.

The judgment is affirmed.

ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge