FILED
United States Court of Appeals
Tenth Circuit

**January 3, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff -Appellee,

v.                                                                          No. 06-4263

TRISHA DAWN CARTER,

Defendant - Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D. Ct. No. 2:05-CR-349-DB)**

Submitted on the briefs:[*]

Robert Breeze, Salt Lake City, Utah, for the Appellant.

Brett L. Tolman, United States Attorney, Stephen J. Sorenson, Assistant United States Attorney, Office of the United States Attorney for the District of Utah, Salt Lake City, Utah, for the Appellee.

Before **TACHA**, **McKAY**, and **LUCERO**, Circuit Judges.

**TACHA**, Circuit Judge.

---

[*]After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

While searching the apartment where Defendant-Appellant Trisha Carter lived with Clete Aguirre, police officers discovered several pieces of stolen mail and washed checks.[1]  Following the search, police officers interviewed Ms. Carter, and she admitted that she helped wash the checks and attempted to cash them.  Ms. Carter was indicted for bank fraud, identity theft, and possession of stolen mail.  She moved to suppress the evidence obtained during the search, as well as her statements to law enforcement officers, as obtained in violation of her Fourth Amendment right to be free from unreasonable searches and seizures.  The District Court denied the motion.  She was convicted of all charges following a two-day jury trial.  She now appeals the District Court's denial of her motion to suppress.  We have jurisdiction under 28 U.S.C. § 1291, and we AFFIRM.

## I.  BACKGROUND

In February 2005, Mr. Aguirre began serving a sentence of probation in the State of Utah.  Under the terms of his probation agreement, Mr. Aguirre was prohibited from—among other things—knowingly associating with people engaged in criminal activities, changing his address without first obtaining permission from his probation officer, and using or possessing illegal drugs.  To ensure his compliance with these conditions, the probation agreement required

---

[1]A washed check has been chemically treated to remove the payee's name and the dollar amount so that it can be filled in fraudulently and negotiated for a higher amount.

Mr. Aguirre to submit to drug testing and to "[p]ermit officers of Adult Probation and Parole to search [his] person, residence, vehicle or any other property under [his] control without a warrant at any time, day or night upon reasonable suspicion to ensure compliance with the conditions of the Probation Agreement."

In April 2005, Mr. Aguirre's probation officer, Arnold Hansen, received information from a social worker from the Division of Child and Family Services ("DCFS") that suggested Mr. Aguirre might be violating the terms of his probation. The social worker told Officer Hansen that Mr. Aguirre had refused to take a drug test because he claimed he was taking medication that would interfere with the results of the test; he did not, however, provide a prescription or other evidence of lawful drug use. In addition, the social worker reported that, after a visit to the home, he became concerned that various people in Mr. Aguirre's apartment were using illegal drugs. Finally, the social worker believed that Mr. Aguirre was going to move out of the apartment, but Mr. Aguirre had not discussed moving with Officer Hansen. Based on the foregoing information, Officer Hansen decided to investigate.

On April 12, 2005, Officer Hansen, accompanied by three other officers, went to the apartment Mr. Aguirre shared with Ms. Carter and rang the doorbell. There was no response from inside the apartment. The officers knocked on the door, causing the door to open approximately three to four inches. They could see that a man was lying on a couch with his back to the door. The officers

entered the apartment and detained the man, as well as another man they found in one of the bedrooms; neither man was Mr. Aguirre. The officers also detained Ms. Carter, who they found in another bedroom. The officers proceeded to search the apartment, whereupon they found stolen mail in various locations, including the bedroom Ms. Carter shared with Mr. Aguirre.

The following day, the officers obtained consent to search the apartment again. During the second search, the officers found more stolen mail, as well as washed checks. During an interview with police officers, Ms. Carter admitted to her role in the crimes.

Ms. Carter and Mr. Aguirre were charged in a five-count indictment with defrauding a bank, in violation of 18 U.S.C. § 1344; aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1); and three counts of receiving stolen mail, in violation of 18 U.S.C. § 1708. The Government moved to dismiss two of the three counts of receiving stolen mail because all the pieces of mail were stolen in the same transaction. The District Court granted the motion. Mr. Aguirre pleaded guilty to aggravated identity theft and was sentenced to 24 months' imprisonment.

Ms. Carter moved to suppress all evidence seized as a result of the search of her apartment on April 12, 2005, including the evidence obtained during the consensual search the following day and her statements to police officers during the interview. She argued that Mr. Aguirre's probation agreement required the

officers to obtain permission to search when they suspected he was violating a condition of his probation; it did not authorize them to search without Mr. Aguirre's consent. According to Ms. Carter, if Mr. Aguirre withheld consent, the officers' sole recourse would be to initiate proceedings to revoke Mr. Aguirre's probation—they could not simply enter the apartment. Ms. Carter also argued that, in any event, the officers lacked reasonable suspicion to believe that Mr. Aguirre was violating the terms of his probation. The District Court denied the motion, and a jury subsequently convicted Ms. Carter on all counts. The District Court sentenced her to 26 months' imprisonment.

Ms. Carter appeals, arguing that the District Court erred in denying her motion to suppress.[2]

## II.  DISCUSSION

In reviewing a district court's denial of a motion to suppress, we view the evidence in the light most favorable to the government and accept the court's factual findings unless they are clearly erroneous. *United States v. McKerrell*, 491 F.3d 1221, 1224–25 (10th Cir. 2007). We review de novo the ultimate determination of reasonableness under the Fourth Amendment. *Id.* at 1225.

The touchstone of the Fourth Amendment is reasonableness. Generally, reasonableness requires law enforcement officers to undertake a search pursuant

---

[2]Because Ms. Carter was living at the residence the probation officers searched Ms. Carter has standing to raise this Fourth Amendment challenge. *See Trask v. Franco*, 446 F.3d 1036, 1042 (10th Cir. 2006).

to a warrant supported by probable cause. But the Supreme Court has recognized exceptions to the warrant and probable-cause requirement where "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987) (quotation omitted). A state's probation system presents one such special need. *See id.* at 875 ("Supervision . . . is a 'special need' of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large."). As a result, a probation search will satisfy the Fourth Amendment if it was "carried . . . out pursuant to state law which itself satisfies the Fourth Amendment's reasonableness requirement." *United States v. Lewis*, 71 F.3d 358, 361 (10th Cir. 1995).

We have previously held that the special needs of Utah's parole system justify an exception to the warrant requirement. *Id.* at 361–62. In addition, we have held that Utah's prerequisites for a warrantless search—that (1) "'the parole agent has a reasonable suspicion that the parolee has committed a parole violation or crime,'" and (2) "'the search is reasonably related to the parole agent's duty'"—comply with the Fourth Amendment. *Id.* at 362 (quoting *State v. Johnson*, 748 P.2d 1069, 1072–73 (Utah 1987)). A probation search is subject to the same requirements in Utah. *See State v. Martinez*, 811 P.2d 205, 209–10 (Utah Ct. App. 1991); *see also United States v. Trujillo*, 404 F.3d 1238, 1241 n.1 (10th Cir. 2005) (noting, in discussing *Griffin*, that the "difference between a

warrantless search pursuant to a probation agreement . . . and a warrantless search pursuant to a parole agreement . . . is immaterial for purposes of Fourth Amendment analysis"). In short, the search in this case does not violate the Fourth Amendment if it satisfies Utah's prerequisites for a warrantless probation search. Ms. Carter does not argue that the search was unrelated to Officer Hansen's duties as a probation officer. Thus, our inquiry centers on whether Officer Hansen had reasonable suspicion to search Mr. Aguirre's residence.

Prior to addressing that question, however, we pause to note that Ms. Carter's primary argument on appeal is that the probation agreement only permitted officers to search if they first requested and received permission to do so from Mr. Aguirre. Because Mr. Aguirre did not consent to the search at issue, Ms. Carter contends that the search was unlawful and all evidence should be suppressed as the fruit of the poisonous tree. For the following reasons, we reject this argument.

Ms. Carter draws support for her argument from the agreement's language, which required Mr. Aguirre to "permit" searches upon reasonable suspicion. She contends that use of the word "permit" means that Mr. Aguirre had to be present and give his consent when the probation officer sought to search the premises. The Utah Court of Appeals has interpreted similar language requiring a probationer to "*allow* [a probation officer] to search [his] person, residence, vehicle or any other property under [his] control, without a warrant, any time of

day or night, upon reasonable suspicion . . . to ensure compliance with the conditions of probation." *Martinez*, 811 P.2d at 209 (emphasis added). The court rejected the defendant's argument that probation officers could conduct a search only when he was present and gave "active consent"; the court explained that such a holding "would nullify [search] provisions in probation agreements, making such provisions merely 'agreements to agree'" and that "by its own terms, the probation agreement permits searches 'at *any time* of the day or night upon reasonable suspicion.'" *Id*.; *see also State v. Davis*, 965 P.2d 525, 529 (Utah Ct. App. 1998) (noting that Utah's reasonable suspicion standard was "echoed" by probation agreement's language requiring that probationer consent to warrantless searches). Because "permit" and "allow" are synonymous, *see* Roget's International Thesaurus 800, 1095 (6th ed. 2001) (including "permit" among synonyms of "allow" and "allow" among synonyms of "permit"), we are convinced that Utah courts would interpret the probation agreement here the same way the state court of appeals interpreted the one at issue in *Martinez*. Thus, in the present case, the search was conducted pursuant to Utah's probation system if Officer Hansen had reasonable suspicion that Mr. Aguirre was violating the terms of his probation.

We now turn to Ms. Carter's contention that Officer Hansen lacked the requisite reasonable suspicion. She argues that the information provided by the social worker was vague and uncorroborated and therefore could not establish

reasonable suspicion. She also argues that Mr. Aguirre was under no obligation to submit to a drug test requested by the DCFS, as opposed to the probation department, so his refusal to do so would not violate the terms of his probation.

Under Utah's "reasonable suspicion" standard, searches are generally upheld when the probation officer's suspicion is based "only on a tip by an anonymous informer, the police, or other sources." *See Martinez*, 811 P.2d at 209–10 (quotation omitted). Indeed, when it comes to probation searches, "to insist upon the same degree of demonstrable reliability of particular items of supporting data, and upon the same degree of certainty of violation, as is required in other contexts" would undermine the probation relationship. *Griffin*, 483 U.S. at 879.

Thus, although the record contains little information about when Officer Hansen received the tip from the DCFS social worker, the social worker's information was sufficient to support the search of a probationer. *See id.* at 871, 880–81 (concluding that probation officers had reasonable grounds to search probationer's residence when they received a tip from a police officer that "there were or might be guns" in the defendant's apartment); *see also Lewis*, 71 F.3d at 362 (concluding that officers had reasonable suspicion to search probationer's residence based on confidential informant's tip, although tip was not corroborated by other evidence). Based on the social worker's tip, Officer Hansen had several pieces of information that would lead a reasonable officer to believe that Mr.

Aguirre was violating the terms of his probation. The officer had information that Mr. Aguirre was possibly planning to move, that Mr. Aguirre was associating with people using illegal substances, and that Mr. Aguirre had refused to take a drug test requested by the DCFS. Furthermore, even if Mr. Aguirre's refusal to submit to a drug test requested by the DCFS did not violate the terms of his probation, it certainly contributed to a reasonable suspicion that he was engaging in unlawful drug use. *See Trujillo*, 404 F.3d at 1245 ("Failing a drug test and refusing to submit to a drug test are objective indications that a particular defendant is not complying with a parole agreement, and strongly contribute to a finding of reasonable suspicion."). The District Court therefore did not err in denying Ms. Carter's motion to suppress.

## III. CONCLUSION

Because the search of Ms. Carter's apartment did not violate the Fourth Amendment, we AFFIRM the judgment of the District Court.