FILED
United States Court of Appeals
Tenth Circuit

December 18, 2008

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENHT CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MOHAMMED ZIBOON,

Defendant - Appellant.

No. 08-3001
(D. Ct. No. 6:07-CR-10120-JTM-001)
(D. Kan.)

---

ORDER AND JUDGMENT[*]

---

Before **TACHA**, **KELLY**, and **HOLMES**, Circuit Judges.

---

A grand jury indicted Defendant-Appellant Mohammed Ziboon on two counts of making a false statement in connection with the purchase of a firearm and two counts of falsely representing himself to be a United States citizen. *See* 18 U.S.C. § 922(a)(6); 18 U.S.C. § 911. Mr. Ziboon filed a motion to suppress evidence, including statements he made to agents of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") during their investigation of his purchases. The district court denied the motion. Mr. Ziboon then entered a

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

conditional guilty plea to one count of falsely representing himself to be a United States citizen and reserved the right to appeal the denial of his motion to suppress. The district court sentenced him to "time served" and remanded him to the custody of the Immigration and Customs Enforcement Service. Thereafter, Mr. Ziboon brought this appeal challenging the denial of his suppression motion. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we AFFIRM the denial of Mr. Ziboon's motion.

## II. BACKGROUND

In April and May of 2007, Mr. Ziboon purchased two forty-five caliber handguns from a pawn shop in Wichita, Kansas. Concurrent with each purchase, Mr. Ziboon completed a mandatory "Firearms Transaction Record" (ATF Form 4473), which required him to certify his country of citizenship. Mr. Ziboon—who is an Iraqi citizen—falsely declared himself to be a citizen of the United States.

Several weeks after the purchases, ATF agents received information that Mr. Ziboon had purchased the firearms, that he was not a United States citizen, and that there was a warrant for his arrest in Iraq for homicide. The agents then obtained a copy of the Iraqi arrest warrant, along with the two Firearms Transaction Records Mr. Ziboon had completed. They concluded that because he had misrepresented his citizenship, he had purchased the firearms unlawfully.

On June 4, 2007, five ATF agents went to the convenience store where Mr. Ziboon worked in order to interview him. Upon arrival, one of the agents

identified himself, displayed his badge, patted Mr. Ziboon down for weapons, and asked about the firearms. Told that the firearms were located behind a counter, the agent retrieved two firearms, only one of which Mr. Ziboon had purchased from the pawn shop.

Another agent then asked Mr. Ziboon "if he would come down to the ATF office where [the agents] could talk to him and try to clear everything up." Mr. Ziboon agreed and rode in the front passenger seat as three agents accompanied him to the office. The agents did not place him in handcuffs and did not formally arrest him at that time.

Upon arrival at the office, Mr. Ziboon and two agents entered an interview room where one of the agents conducted a video-taped interview. The interviewing agent read Mr. Ziboon his *Miranda* rights, and Mr. Ziboon waived these rights orally and in writing.

During the interview, Mr. Ziboon admitted that he had purchased a gun that corresponded to one of the Firearms Transaction Records he had completed and affirmed that he was not a United States citizen. Not long thereafter, the interviewing agent told Mr. Ziboon he was placing him under arrest, and Mr. Ziboon invoked his right to counsel.

Before trial and pursuant to Fed. R. Crim. P. 12(b)(3), Mr. Ziboon moved to suppress all of his statements to the agents at the convenience store and at the ATF office, along with any evidence derived directly or indirectly therefrom. He

argued that because ATF agents did not have probable cause to arrest him on June 4, 2007, his statements to them should be suppressed as fruit of the poisonous tree. Following an evidentiary hearing, the district court denied the motion, concluding that (1) Mr. Ziboon had consented to accompany the agents to the ATF office and was not under arrest at that time, nor was he under arrest during the interview; (2) even if the agents had arrested Mr. Ziboon during the interview, they would have had probable cause; and (3) Mr. Ziboon waived his *Miranda* rights knowingly and voluntarily.

Mr. Ziboon appeals, arguing that the district court erred in denying his motion to suppress.

## II. DISCUSSION

When reviewing a district court's denial of a motion to suppress, we accept the court's factual findings unless they are clearly erroneous, and we view the evidence in the light most favorable to the government as the prevailing party. *United States v. Burson*, 531 F.3d 1254, 1256 (10th Cir. 2008). "We review de novo the ultimate determination of reasonableness under the Fourth Amendment." *United States v. Carter*, 511 F.3d 1264, 1267 (10th Cir. 2008).

Mr. Ziboon first argues that he was under arrest throughout his entire encounter with ATF agents,[1] and that this arrest was made without a warrant and

---

[1]Mr. Ziboon does not identify the moment when he asserts he was placed under arrest. His brief mentions only that he was under arrest at the time he was
(continued...)

without probable cause. Because Mr. Ziboon was not formally placed under arrest until near the end of questioning at the ATF office, however, we consider whether he was otherwise seized in circumstances that would require probable cause. *See Fuerschbach v. Sw. Airlines Co.*, 439 F.3d 1197, 1203 (10th Cir. 2006) (explaining that, absent exceptions not applicable here, a seizure requires either a warrant or probable cause).

A seizure occurs "only when the officer, by means of physical force or show of authority, in some way restrains the liberty of a citizen." *United States v. Zapata*, 997 F.2d 751, 756 (10th Cir. 1993) (quotations and alterations omitted). "[T]he crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Florida v. Bostwick*, 501 U.S. 429, 437 (1991). The following factors guide our determination of whether a person was, in fact, seized:

> the threatening presence of several officers; the brandishing of a weapon by an officer; some physical touching by an officer; use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory; prolonged retention of a person's personal effects . . . ; a request to accompany the officer to the station; interaction in a nonpublic place or a small, enclosed place; and

---

[1](...continued)
questioned by ATF agents. Because they questioned him both at the convenience store and at the ATF office before formally arresting him, we perceive his argument to be that he was under arrest during questioning at both places.

absence of other members of the public.

*United States v. Hill*, 199 F.3d 1143, 1147–48 (10th Cir.1999); *see also*

*Fuerschbach*, 439 F.3d at 1203 (applying the *Hill* factors to determine whether a

person was seized).  "We have steadfastly refused to view any one of these

factors as dispositive," *Hill*, 199 F.3d at 1148 (quotations omitted), and we

recognize that "every case turns on the totality of the circumstances presented."

*Id.* at 1147 (quotations omitted).

In this case, some circumstances suggest that Mr. Ziboon was seized for

Fourth Amendment purposes before he was formally placed under arrest, while

other factors counsel against such a determination.  For example, Mr. Ziboon

emphasizes the number of officers present at the convenience store and during

questioning at the ATF office, as well as the fact that the officers (rather than Mr.

Ziboon himself) drove him to the office.  The government points out that the

officers never threatened Mr. Ziboon; they never brandished a weapon or used

aggressive language or even a tone of voice indicating that compliance with their

requests was compulsory.  Instead, they asked Mr. Ziboon whether he would

accompany them to the ATF office, and he consented.  In addition, the nature and

scope of the subsequent questioning did not transform this voluntary encounter

into a nonconsensual seizure.

Resolution of this issue is not necessary because even if Mr. Ziboon was

seized from the moment officers entered his place of work, the seizure was clearly

supported by probable cause. "The ultimate determination of whether probable cause to arrest existed is a legal issue that we review de novo." *United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004). "Probable cause to arrest exists only when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Id.* (quotations omitted). The record indicates that prior to June 4, ATF agents possessed reasonably trustworthy information that Mr. Ziboon had committed the two crimes for which he was ultimately charged. Specifically, the agents had verified that Mr. Ziboon was not a United States citizen. The agents had also reviewed the Form 4473s Mr. Ziboon had filled out to purchase the two guns, both of which indicated that Mr. Ziboon was a United States citizen. Thus, the agents had probable cause to believe that Mr. Ziboon had (1) made a false statement in connection with the purchase of a firearm, in violation of 18 U.S.C. § 922(a)(6), and (2) falsely represented himself as a United States citizen, in violation of 18 U.S.C. § 911.[2]

---

[2]Mr. Ziboon argues that the agents arrested him based on a mistake of law—that they could enforce the Iraqi warrant—and on a mistake of fact—that he was in the country unlawfully and thus precluded from owning a firearm. The district court, however, found that "the ATF agents did not approach Mr. Ziboon solely because of an Iraq warrant; rather the ATF agents were alerted to Mr. Ziboon based upon violations of gun laws as well as the outstanding arrest warrant from Iraq." Mr. Ziboon does not explain how this finding is clearly erroneous. Moreover, our independent review of the record establishes that the

(continued...)

Finally, Mr. Ziboon argues that his waiver of his *Miranda* rights was neither knowing nor voluntary. "The validity of a defendant's waiver of his or her Fifth Amendment rights is reviewed de novo with the underlying facts reviewed under the clearly erroneous standard." *United States v. Morris*, 287 F.3d 985, 988 (10th Cir. 2002). Here, the record adequately supports the district court's conclusion that Mr. Ziboon's waiver was knowing and voluntary, and we find no basis for his argument to the contrary. At the outset of the interview, an agent read him his *Miranda* rights. Mr. Ziboon then waived those rights both verbally and in writing. He later demonstrated his understanding of those rights by exercising his right to an attorney. The Constitution does not require that he know and understand every possible consequence of his waiver. *See Colorado v. Spring*, 479 U.S. 564, 574 (1987). Accordingly, the district court did not err in determining that Mr. Ziboon's waiver of his *Miranda* rights was both knowing and voluntary.

---

[2](...continued)
ATF officers made contact with Mr. Ziboon based in part on their belief that he had falsely represented his country of citizenship on the two Form 4473s. That belief being reasonable, the officers had probable cause to arrest him for those crimes, irrespective of the Iraqi warrant or other alleged violations.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of Mr. Ziboon's motion to suppress evidence.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge