# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3521

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Jason Paul Annis, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: April 20, 2006
Filed: May 8, 2006

_____

Before WOLLMAN, HANSEN, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Jason Paul Annis pled guilty to manufacturing and attempting to manufacture methamphetamine, and to being a felon in possession of a firearm. The district court[1] sentenced him within the advisory Guidelines range to 235 months. He appeals, arguing the district court erred in determining the drug quantity, finding he possessed a firearm in connection with another felony, and denying an acceptance-of-responsibility reduction. He also asserts the sentence is unreasonable. Having jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, this court affirms.

---

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

# I.

On July 29, 2004, police officers arrived at the house of Heather Annis, suspecting it contained a methamphetamine lab. After she consented, police searched the garage and found Annis, her brother, injecting himself with meth. He scuffled with police while being arrested, but afterward did not appear to be injured. An officer read Annis his *Miranda* rights while in the patrol car. He admitted that the meth items in the garage were his. At the police station, he was involved in another altercation with an officer. He suffered "a minimally displaced fracture of his orbit and a facial bone," was taken to a local hospital, and treated with an ice pack and Tylenol.

Two days later, Annis phoned his sister, asking her to contact Officer Phil Fordyce. She called Fordyce, telling him Annis was in pain and wanted to speak with him. Fordyce called the jail, informed them Annis was in pain, and set up an interview time. Arriving at the jail, Fordyce advised Annis of his *Miranda* rights again. Fordyce interviewed him about the details of his meth production. Annis answered the questions, admitting to estimates of the quantities of meth he manufactured, but never mentioning he was in pain. At the end of the interview, Fordyce typed a report in Annis's presence, had him read it on the computer screen, and then had him read the printed version. After reading and reviewing the interview report, Annis signed it in the presence of a witness.

Annis pled guilty to manufacturing and attempting to manufacture methamphetamine, and to being a felon in possession of a firearm. After calculating the Guidelines range to be 235 to 293 months, the district court sentenced him to 235 months in prison.

II.

A.

First, Annis claims his signed statement cannot be used to determine the quantity of meth he manufactured because he did not voluntarily or knowingly waive his *Miranda* rights. Because the district court essentially conducted a suppression hearing during the sentencing proceeding, this court reviews its fact finding for clear error and its application of law to those facts de novo. *See United States v. Jones*, 275 F.3d 673, 678–79 (8th Cir. 2001). This court "will affirm the district court's denial of a motion to suppress evidence unless it is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made." *Id*.

A defendant's statement of drug quantity may be used to determine his base offense level under the advisory Guidelines. *See United States v. Ingles*, 408 F.3d 405, 409 (8th Cir. 2005). However, it may be used only if the defendant knowingly and voluntarily waived her *Miranda* rights. *See Missouri v. Seibert*, 542 U.S. 600, 608 n.1 (2004); *United States v. Black Bear*, 422 F.3d 658, 663 (8th Cir. 2005). "A waiver is 'knowing and intelligent' where it is made with full awareness of both the nature of the right being abandoned and the consequences of abandoning the right, and a waiver is 'voluntary' where the court can determine that the waiver was a product of the suspect's free and deliberate choice, and not the product of intimidation, coercion, or deception." *Thai v. Mapes*, 412 F.3d 970, 977 (8th Cir. 2005). A statement is not voluntary if the totality of the circumstances shows the defendant's will was overborne. *See United States v. Glauning*, 211 F.3d 1085, 1087 (8th Cir. 2000).

In this case, there is no evidence Annis unknowingly and involuntarily waived his *Miranda* rights. He initiated contact with Fordyce, through his sister, asking for a meeting. He was read his rights at least twice – once in the patrol car and once right

before Fordyce interviewed him at the jail. During the interview, he answered Fordyce's questions, admitting the quantity of meth he manufactured. Fordyce typed his report on a word processor in Annis's presence, and Annis read and reviewed it on the computer screen. Fordyce then printed out the report, which Annis again read, reviewed, and signed. Although he had ample opportunity, Annis neither objected to the report's contents, including his meth-quantity statement, nor told Fordyce he was in any pain. *See Seibert*, 542 U.S. at 608–09 ("[M]aintaining that a statement is involuntary even though given after warnings and voluntary waiver of rights requires unusual stamina, and litigation over voluntariness tends to end with the finding of a valid waiver."), *citing Berkemer v. McCarty*, 468 U.S. 420, 433 n.20 (1984).

Annis, however, asserts he did not knowingly and voluntarily waive his rights because he thought Fordyce "was there to help him regarding his pain." He claims the pain from his injuries, combined with meth withdrawal, made it impossible for him to voluntarily and knowingly waive his rights at the time of the interview. He also argues that, separate from his waiver argument, these factors made his statement involuntary. This court, though, has declined to adopt a per se rule of involuntariness founded solely on intoxication. *See United States v. Makes Room*, 49 F.3d 410, 415 (8th Cir. 1995). Instead, "the test is whether these mental impairments caused the defendant's will to be overborne." *United States v. Casal*, 915 F.2d 1225, 1229 (8th Cir. 1990). Annis provided no evidence that his pain and meth withdrawal caused his will to be overborne. To the contrary, the government proved that during the interview Annis answered questions reasonably, even reading and reviewing his statements twice and signing the report. He did not appear to be in any pain or suffering from withdrawal, and did not complain to Fordyce. *See id.* (explaining that because defendant talked coherently and did not appear to be intoxicated, there was

no error). There is no evidence of police coercion overbearing his will. Thus, his waiver, as well as his statement, were both knowing and voluntary.[2]

B.

Next, Annis argues his sentence should not have been enhanced for possession of a firearm used in connection with manufacturing meth. This court reviews a district court's finding that a defendant possessed a dangerous weapon during a drug offense for clear error. *See United States v. Lopez*, 416 F.3d 713, 715 (8th Cir. 2005).

"Generally, the weapon enhancement is applicable 'if the gun is found in the same location where drugs or drug paraphernalia were stored, or where part of the conspiracy took place.'" *United States v. Perez-Guerrero*, 334 F.3d 778, 784 (8th Cir. 2003), *quoting United States v. Braggs*, 317 F.3d 901, 904 (8th Cir. 2003). The district court found, and Annis admits, that he kept a sawed-off rifle at his home, where police also found evidence of meth manufacturing. Witnesses saw the gun "assembled and leaning against the wall in the living room," as well as being cleaned

---

[2]Annis also argues that the Fifth Amendment requires the government at sentencing to prove his relevant conduct beyond a reasonable doubt. This court has already stated that, at sentencing, the government has the burden to prove drug quantity by a preponderance of the evidence. *See, e.g., United States v. Ziesman*, 409 F.3d 941, 955 (8th Cir. 2005); *see also Black Bear*, 422 F.3d at 663 (same standard applies in determining whether *Miranda* waiver was knowing and voluntary). As explained, the district court applied the correct standard.

Additionally, Annis asserts that the district court should not have relied on the testimony of two other government witnesses because they are not credible. Credibility assessments are for the fact-finder. *See United States v. Tensley*, 334 F.3d 790, 795 (8th Cir. 2003); *United States v. Cabrera*, 116 F.3d 1243, 1245 (8th Cir. 1997) ("An appellate court is 'not in the best position to judge the credibility of witnesses . . .'"). Here, the record supports the district court's determination. *See United States v. Buford*, 108 F.3d 151, 155 (8th Cir. 1997).

and painted by Annis.  *See United States v. Denton*, 434 F.3d 1104, 1114 (8th Cir. 2006) (witnesses saw defendant with gun).  This evidence supports the district court's determination that he possessed a weapon in connection with a drug-related offense.

However, Annis claims his sentence should not have been adjusted under U.S.S.G. § 2D1.1(b)(1) because the gun was missing both the clip and the bolt.  The Guidelines state: "If a dangerous weapon (including a firearm) was possessed, increase by **2** levels."  **U.S. Sentencing Guidelines Manual § 2D1.1(b)(1) (2004)**.  The Guidelines further state:

> "Dangerous weapon" means (i) an instrument capable of inflicting death or serious bodily injury; or (ii) an object that is not an instrument capable of inflicting death or serious bodily injury but (I) closely resembles such an instrument; or (II) the defendant used the object in a manner that created the impression that the object was such an instrument . . . .

**Id. § 1B1.1, cmt. n.1(D)**.  Additionally, "'Firearm' means (i) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive . . . ."  **Id. cmt. n.1(G)**.

In this case, the district court stated that Annis could easily "make the rifle operational in just a few seconds by putting the bolt in."  The same can be said for the clip.  Thus, the gun qualifies as a firearm under the Guidelines.  *See United States v. Mullins*, No. 05-2420, 2006 WL 1132344, at *2 (8th Cir. May 1, 2006) (expert testimony established starter gun may readily be converted); *United States v. Christmann*, 193 F.3d 1023, 1024 (8th Cir. 1999) ("The definition turns on what the weapon is designed to do, not on whether it is capable of doing its job at the particular moment that the crime was committed.").  Even partially disassembled, the gun is still a dangerous weapon because it not only closely resembles such an instrument, but also was used  in a manner that created the impression it was a working gun.  *Cf. Christmann*, 193 F.3d at 1024–25 (explaining firearm definition turns on what

weapon was designed to do "because the bank employees had no way of knowing that the gun was unloaded, and, in fact, the robbers manifestly intended the bank employees to believe that the gun was loaded.").  Therefore, the district court did not clearly err in applying § 2D1.1(b)(1).[3]

C.

Third, Annis claims he should have received a downward adjustment for acceptance of responsibility.  "A district court's factual  determination on whether a defendant has demonstrated acceptance of responsibility is entitled to great deference and should be reversed only if it is so clearly erroneous as to be without foundation." *United States v. Card*, 390 F.3d 592, 594 (8th Cir. 2004), *quoting United States v. Nguyen*, 339 F.3d 688, 690 (8th Cir. 2003).

Annis argues that under § 3E1.1 of the Guidelines, he only has to admit the conduct comprising the offense of conviction (in this case, manufacturing and attempting to manufacture meth), but does not have to admit any relevant conduct beyond the offense, by which he means the quantity of meth manufactured.  The district court found that he had "not accepted personal responsibility for his criminal behavior" because "his challenge to his own statement of drug quantities .  . . is inconsistent with acceptance of responsibility."  The court made clear that the basis of the denial was Annis's "challenge to the reliability of those statements, not the voluntariness of them."

Although stating that he is simply putting the government to its burden of proof, this is not a case where a defendant remained silent as to relevant conduct.  *See* **U.S.**

---

[3]Annis also challenges the district court's § 2K2.1(b)(5) adjustment for use or possession of a firearm in connection with another felony offense.  Because his sentence for manufacturing and attempting to manufacture meth was the greater of the two, this court does not need to address this claim.

**Sentencing Guidelines Manual § 3E1.1, cmt. n.1(a)** ("A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection.").  Instead, he contested his earlier statement regarding meth quantity as unreliable.  Moreover, the Guidelines state that entry of a guilty plea and truthfully admitting or not falsely denying any additional relevant conduct "will constitute significant evidence of acceptance of responsibility." *Id.* **cmt. n.3.**  "However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility.  A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right."  *Id*.

In this case, the district court found Annis falsely denied or frivolously contested his relevant conduct.  He asserted his earlier statement was unreliable, and refused to admit to any quantity of meth.  His conduct in challenging the reliability of his statement is inconsistent with acceptance of responsibility and outweighs the decision to plead guilty – his lone act of cooperation.  *See id*.  There is no clear error.  Because he does not qualify for downward adjustment under § 3E1.1(a), he is not eligible under § 3E1.1(b).

D.

Finally, Annis states his sentence is unreasonable because the district court failed to apply the sentencing factors in 18 U.S.C. § 3553(a).  This court reviews the reasonableness of a defendant's sentence for abuse of discretion.  *See **United States v. Haack***, 403 F.3d 997, 1003 (8th Cir. 2005).

The district court calculated the Guidelines range to be 235 to 293 months, sentencing him to 235 months in prison.  A sentence within the Guidelines range, as here, is presumptively reasonable.  *See **United States v. Lincoln***, 413 F.3d 716, 717 (8th Cir. 2005).  Also, at the sentencing hearing the district court expressly considered

the § 3553(a) factors. *See **United States v. Swehla***, 442 F.3d 1143, 1145 (8th Cir. 2006). Annis's real argument is that the court did not apply these factors correctly, otherwise he would have received a lesser sentence. But, the record reflects the district court did not abuse its discretion in sentencing him within the Guidelines range.

III.

The judgment of the district court is affirmed.

_____