# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3375

_____

United States of America,             \*

                                   \*

         Appellee,            \*    Appeal from the United

                                   \*    States District Court for

      v.                    \*    the District of South Dakota.

                                   \*

Sitha Savatdy,                  \*

                                   \*

         Appellant.         \*

_____

Submitted: April 17, 2006
Filed: July 10, 2006

_____

Before WOLLMAN, BEAM, and BENTON, Circuit Judges.

_____

BEAM, Circuit Judge.

In February 2004, Sitha Savatdy, a foreign national whose primary language is Laotian, and three others, were charged in a one-count indictment with conspiracy to distribute methamphetamine. Three were tried together. The fourth, Juan Valadez, was in custody in another district at the time of trial. After the district court[1] denied Savatdy's motion to suppress, and admitted statements made by Savatdy while he was

---

[1] The Honorable Lawrence L. Piersol, Chief Judge, United States District Court for the District of South Dakota, adopting the report and recommendation of the Honorable John E. Simko, United States Magistrate Judge for the District of South Dakota.

in police custody, a jury found Savatdy guilty of conspiracy to distribute 500 grams or more of methamphetamine. During the trial, Savatdy moved for judgment of acquittal and the court took his motion under advisement specifically as to the evidence supporting the amount of drugs attributable to Savatdy. One year later, the district court denied that motion.

Savatdy appeals from the jury's verdict, the district court's order denying his motion for judgment of acquittal, and its denial of his motion to suppress statements. Savatdy presents two issues on appeal: (1) whether there was sufficient evidence to support the conspiracy conviction, and (2) whether the district court erred in refusing to suppress post-<u>Miranda</u> statements made by Savatdy. We affirm.

## I.    BACKGROUND

We state the facts in the light most favorable to the jury verdict. <u>United States v. Selwyn</u>, 398 F.3d 1064, 1065 (8th Cir. 2005). Savatdy was charged by indictment for participating in a drug conspiracy with Juan Valadez, Det Khaoone and Chitprasong Amphavannasouk from February 2003 to July 8, 2003. Another man, Sirich Hochingnavong ("Ed") was a fifth alleged conspirator, and the only one to testify at trial. Ed had already been convicted and sentenced to serve 168 months' imprisonment for conspiracy to possess with intent to distribute methamphetamine.

The indictment in this case was the product of a lengthy investigation into methamphetamine distribution in and around Sioux Falls. Although there was testimony concerning government surveillance of and controlled buys from the others indicted, as well as information from other government sources on his co-defendants, there was no evidence of this sort on Savatdy. There was evidence connecting Ed to two of Savatdy's co-defendants, and Savatdy's primary, if not only, connection to his co-defendants was through Ed.

The evidence against Savatdy included (1) testimony that Ed lived with Savatdy for approximately eight months in 2001, (2) Ed's testimony that he bought methamphetamine from Savatdy on one occasion between January 2003 and July 2003, (3) Ed's testimony that he sold methamphetamine to Savatdy, (4) proof that Ed and Savatdy had over 150 phone conversations during the time period at issue, (5) Savatdy admitting to making three trips from Sioux Falls to Sioux City to obtain methamphetamine from co-defendant Valadez, obtaining one ounce on each of the first two trips and 1/4 pound on the third, and (6) Savatdy taking Ed with him on one of the trips to Sioux City. The evidence further established that Ed sold methamphetamine to Savatdy's co-defendants.

After his arrest, and once at the Sioux Falls Police Department, Savatdy was led into an interview room in handcuffs, which were removed when he sat down. Savatdy was clearly in custody, but the parties dispute whether Savatdy waived his Miranda rights prior to interrogation. The subsequent interrogation was videotaped. Agent Hummel began the interview by asking routine questions such as Savatdy's name, date of birth, telephone number and home address. Savatdy responded to each question in English but hesitated before reciting his address–he had recently moved. Agent Hummel then advised Savatdy of his Miranda rights, pausing after the recitation of each right to ask Savatdy if he understood what Agent Hummel was stating, and repeating those portions Savatdy questioned. For example, after Agent Hummel stated that Savatdy had the right to counsel, that he had the right to have counsel present during the interview, and that if he could not afford a lawyer, the government would appoint a lawyer for him, Savatdy indicated he did not understand. Agent Hummel proceeded to explain that if Savatdy could not afford a lawyer, the government would provide one for him.

Though Savatdy did not sign or initial any document indicating that he understood his rights or waived his rights, Savatdy ultimately indicated that he understood each of the rights recited by Agent Hummel. Following the Miranda

recitation, Agent Hummel began questioning Savatdy about his involvement in the alleged conspiracy.

## II.     DISCUSSION

### A.     Conspiracy

Our standard of review concerning whether the evidence is sufficient to support a conviction is strict. United States v. Alexander, 408 F.3d 1003, 1008 (8th Cir. 2005). "When reviewing the sufficiency of the evidence to support a conspiracy conviction, we will affirm if the record, viewed most favorably to the government, contains substantial evidence supporting the jury's verdict, which means evidence sufficient to prove the elements of the crime beyond a reasonable doubt." United States v. Lopez, 443 F.3d 1026, 1030 (8th Cir. 2006).

To establish that Savatdy conspired to distribute methamphetamine, the government must prove: (1) that there was a conspiracy–an agreement to distribute methamphetamine; (2) that Savatdy knew of the conspiracy; and (3) that Savatdy intentionally joined the conspiracy. Alexander, 408 F.3d at 1008. "[A] defendant may be convicted for even a minor role in a conspiracy, so long as the government proves beyond a reasonable doubt that he or she was a member of the conspiracy." Lopez, 443 F.3d at 1030. A conspiracy may be inferred from circumstantial evidence; it need not be proved by direct evidence. Id.

According to the district court, "[t]his case tests the elasticity of criminal conspiracy law." During deliberations, the jury asked the district court "[i]f we have decided on the conspiracy [charge] for all & agree on two individuals @ 500 grams –are then, all three (3) defendants automatically guilty of the same 500 grams due to conspiracy connection." (Second alteration in original.) The court then gave the following supplemental instruction:

-4-

If you found that all three Defendants were a part of the same conspiracy, then each of the three Defendants would be responsible for 500 grams or more of methamphetamine. If the one Defendant was found to be part of only a separate conspiracy with [Ed], and not part of a conspiracy with the other two defendants, then you must find that one Defendant not guilty.

The jury subsequently returned verdicts finding all three defendants guilty of the conspiracy to distribute 500 grams or more of methamphetamine. The district court noted that given its supplemental instruction, the jury could not have found that the only conspiracy Savatdy was involved in was a separate one with Ed. The district court did acknowledge, however, that the jury must have accepted Ed's testimony as truthful in order to support its verdict of conspiracy between the defendants and Ed because there was limited evidence otherwise to support only a conspiracy among the three defendants on trial.

We conclude that the evidence, viewed most favorably to the government, supports Savatdy's conviction and that he contributed to the conspiracy's success. The gravamen of the government's case against Savatdy, linking Savatdy to Khaoone and Amphavannasouk, relies upon Ed's testimony, which the jury deemed credible. Importantly, even if there were contradicting testimony concerning this connection, "we are obliged to defer to the jury's determination of the credibility of the witnesses." Lopez, 493 F.3d at 1031. Likewise, the jury could infer from the statements Savatdy made to Agent Hummel during interrogation that Savatdy did travel to Sioux City three times to buy drugs for distribution, and participated in the alleged conspiracy. Accordingly, we affirm Savatdy's conviction.

## B.   Admission of Statements

Concerning the district court's denial of Savatdy's motion to suppress evidence, this court reviews the district court's fact finding for clear error and its legal

conclusions de novo.  U.S. v. Annis, 446 F.3d 852, 855 (8th Cir. 2006).  We will affirm the district court unless it is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made.  Id.

The district court reviewed the videotape, as did we, and noted that Savatdy expressed his understanding of each separate right before Agent Hummel moved to the next.  The court carefully examined the interrogation in light of Miranda jurisprudence and determined that Savatdy "knowingly, voluntarily and intelligently waived his Miranda rights, and his statements during the interview were voluntary."  The district court's determination was supported by the record and was neither an erroneous interpretation of applicable law nor clearly mistaken.

## III.    CONCLUSION

We affirm.

_____