# United States Court of Appeals
## For the First Circuit

_____

No. 13-1899

UNITED STATES OF AMERICA,

Appellee,

v.

WILFREDO MELENDEZ,

Defendant, Appellant.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

_____

Before

Lynch, Chief Judge,
Ripple* and Selya, Circuit Judges.

_____

    Mark E. Howard for appellant.
    Kelly Begg Lawrence, Assistant United States Attorney, with whom Carmen M. Ortiz, United States Attorney, was on brief, for appellee.

_____

_____

  * Of the Seventh Circuit, sitting by designation.

December 22, 2014

_____

**RIPPLE, <u>Circuit Judge</u>**.  Wilfredo Melendez was charged with conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and possession of a firearm in furtherance of a drug offense, in violation of 18 U.S.C. § 924(c)(1)(A). Mr. Melendez pleaded not guilty, and the case was tried to a jury.  During its deliberations, the jury posed two questions to the district court, which the court answered after consulting with the parties.  The jury found Mr. Melendez guilty of conspiracy to distribute five kilograms or more of cocaine, but not guilty of possession of a firearm in furtherance of a drug trafficking crime.  The district court sentenced Mr. Melendez to 144 months' imprisonment, a sentence below that suggested by the United States Sentencing Guidelines.  Mr. Melendez now appeals; he contends that the district court's responses to the jury's questions, as well as its determinations during sentencing, were erroneous.  For the reasons set forth in this opinion, we now affirm the judgment of the district court.

I.

BACKGROUND

Mr. Melendez's arrest followed a reverse sting operation conducted by the Drug Enforcement Administration ("DEA").  Agents posed as members of a Colombian drug-

trafficking organization. One of the undercover agents contacted Rafael Guzman, the target of the investigation. Guzman expressed an interest in buying kilogram quantities of cocaine, and the agent agreed to sell him five kilograms. The terms of their bargain were that Guzman would receive five kilograms of cocaine; he would pay for three kilograms at the time of the exchange and for the remaining two kilograms two weeks later.

Mr. Melendez had approached Guzman in search of a cocaine supplier and, although he was not involved in any of the communications between Guzman and the DEA, agreed to supply the money to purchase the cocaine from the undercover agent. He planned to distribute the cocaine after the deal.

The DEA was unaware of Mr. Melendez's involvement until the day of the sting operation. Before meeting Guzman for the transfer of money and drugs, the undercover agent called him and asked if he was alone. Guzman responded that someone was with him. Thereafter, Guzman arrived with Mr. Melendez. Guzman and the undercover agent got out of their vehicles and conversed. Guzman indicated that Mr. Melendez was working with him in the drug deal and that he was providing the money to purchase the cocaine. Because Guzman secretly was profiting

from the deal, he asked the undercover agent not to tell Mr. Melendez the actual price of the cocaine.[1]

The undercover agent and Guzman then entered Guzman's car, where Mr. Melendez already was seated. The agent confirmed that he would deliver "five for the three. You owe me two."[2] Mr. Melendez asked to "check [the cocaine] out" and inquired of the undercover agent whether he and his drug-trafficking organization typically conducted their drug deals in public parking lots.[3] The agent, pretending to call the man who would deliver the cocaine, signaled nearby law enforcement agents to arrest the men. Those agents converged on the vehicle and arrested Guzman and Mr. Melendez. The agents seized two firearms from the center front console of the vehicle and approximately $92,000 in cash, wrapped in rubber bands, from a laptop bag.

The Government subsequently charged Mr. Melendez with conspiring to distribute over five kilograms of cocaine and with

---

[1]    In order to profit from the transaction, Guzman had told Mr. Melendez that the price per kilogram of cocaine was $31,000, even though the planned purchase price was $28,000 per kilogram.

[2]    R.176 at 83.

[3]    Id. at 83-84.

possession of a firearm in furtherance of a drug offense. The jury returned a verdict of guilty on the drug offense and of not guilty of the firearm offense. After sentencing, Mr. Melendez timely filed a notice of appeal.[4]

## II.

### DISCUSSION

Mr. Melendez claims that the district court issued faulty jury instructions, focusing on the district court's response to two questions posed by the jury during its deliberations. He also submits that the district court erred by sentencing him without making an individualized finding of the drug weight attributable to him. Finally, he contends that the district court abused its discretion by refusing to grant him a two-level reduction for acceptance of responsibility.

### A.

We first examine whether the district court's instructions, including those provided in response to the jury's questions during its deliberations, were erroneous. About two hours into its deliberations, the jury sent the court a note

---

[4] The district court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

asking, "If a conspiracy exists, if only one conspirator knew of the entire amount of the deal, are both parties responsible for the entire amount as, from verdict sheet, 1B states 'distributed by the conspirators' (plural)."[5] After some discussion, counsel for Mr. Melendez suggested as a response:

> No. Both conspirators must be in agreement to distribute the five together. If there was a separate agreement or scheme to distribute to other unindicted known and unknown co-conspirators, then the defendant is only responsible for that amount for which he was going to distribute separately as well as Mr. Guzman.[6]

The court rejected this approach as well as the Government's formulation.[7] Instead, it decided on the following response: "The conspirators must agree as to the object of the conspiracy. In Question 1B this means that the conspirators must agree upon the amount of the drugs that will be distributed

---

[5]    R.178 at 70.

[6]    Id. at 73-74.

[7]    The Government suggested that the court instruct the jury: "If the jury were to find the defendant guilty of conspiring to distribute cocaine, the jury must unanimously agree on the weight of the cocaine that was the subject of the conspiracy involving the defendant, or, as an alternative, if the conspiracy exists, the jury must unanimously agree on the weight of cocaine that the conspirators intended to distribute." Id. at 73.

by members of the conspiracy."[8] The court denied Mr. Melendez's request that the instruction reference both unindicted and unknown coconspirators. The instruction was then delivered to the jury.

Approximately four hours later, the court convened the parties to discuss a second question from the jury. The jury asked, "Must we be unanimous on all three count decisions?"[9] The district court recognized that "the answer, of course, is yes, but it has a nuance to it, and the nuance is whether or not I give them the [Allen v. United States, 164 U.S. 492 (1896)] charge of some sort."[10] The Government stated that it did not believe an Allen charge was necessary at that point. Mr. Melendez was in agreement that an Allen charge was inappropriate because there had only been a half-day of deliberations. The court stated that it would respond, "You should make every effort to be unanimous, to reach a unanimous verdict on all counts."[11] In addition, after a discussion with the parties, it was agreed that the court would ask the jurors

---

[8]  Id. at 74.

[9]  Id. at 75.

[10]  Id. at 75-76.

[11]  Id. at 76.

if they would like dinner ordered for them. The court then reiterated its response to the jury's second question, and it was taken to the jury.

Forty-two minutes later, the jury returned with a verdict. After the jury returned to the courtroom, the court asked, "Mr. Foreperson, I understand the jury has a unanimous verdict; is that correct?"[12] The foreperson answered, "Yes."[13] The court clerk read the verdict from the jury's verdict slip. The jury found Mr. Melendez guilty of conspiracy to distribute five or more kilograms of cocaine and not guilty of possession of a firearm in furtherance of a drug trafficking crime. Mr. Melendez did not ask to poll the jury. The court proceeded to set a date for sentencing.

Mr. Melendez did not object to either supplemental instruction at trial, and we therefore review for plain error. See United States v. Delgado-Marrero, 744 F.3d 167, 184 (1st Cir. 2014). For a defendant to prevail under plain error review, he must show "that an error occurred," "that the error was clear or obvious," that it affected his substantial rights, and that it seriously impaired the "fairness or integrity" of

---

[12] Id. at 78.

[13] Id.

the proceedings.  Id.  In evaluating the instructions given to the jury, "we must examine the jury charge as a whole in order to determine whether the district judge clearly conveyed the relevant legal principles," "mindful that 'the district court has considerable discretion in how it formulates, structures, and words its jury instructions.'"  United States v. Gonzalez, 570 F.3d 16, 21 (1st Cir. 2009) (quoting United States v. Prigmore, 243 F.3d 1, 17 (1st Cir. 2001)).

1.

Mr. Melendez claims that the district court failed to properly instruct the jury that it must reach a verdict beyond a reasonable doubt.  He bases this claim primarily on the district court's response to the jury's first question:  "If a conspiracy exists, if only one conspirator knew of the entire amount of the deal, are both parties responsible for the entire amount as, from verdict sheet, 1B states 'distributed by the conspirators.'"[14]

Mr. Melendez faults the district court's answer that "the conspirators must agree upon the amount of the drugs that will be distributed by the members of the conspiracy" for not

---

[14]    Id. at 70.

mentioning the beyond-a-reasonable-doubt standard.[15]  He contends that without clear and precise instructions on the issue of drug weight, we cannot be confident of the integrity of the jury's verdict.

Any fact that triggers a mandatory minimum sentence is an element of the offense that must be submitted to the jury and proved beyond a reasonable doubt.  See Alleyne v. United States, 133 S. Ct. 2151, 2155, 2160-61 (2013).  Because drug weight determines the mandatory minimum sentence, see 21 U.S.C. § 841(b)(1)(A), it is an element of the aggravated crime that must be determined by the jury beyond a reasonable doubt, see Delgado-Marrero, 744 F.3d at 186.

We cannot accept Mr. Melendez's contention that the instruction as given diluted the beyond-a-reasonable-doubt standard.  Jury instructions must be read and evaluated as a whole.  See Gonzalez, 570 F.3d at 21.  Here, when the jury instructions are viewed in this manner, it is clear that they conveyed to the jury that it must find drug weight beyond a reasonable doubt.  At the beginning of trial, the court instructed the jury that "part of the case that the Government

---

[15]    Id. at 75.

must prove beyond a reasonable doubt is the amount of drugs involved."[16] Later, before the jury began deliberating, the district court instructed the jury that the Government had to prove the agreement and the object of the agreement beyond a reasonable doubt. The court then stated that "the object of the conspiracy that is alleged in the indictment is to distribute at least five kilograms of cocaine."[17] The court went on to explain

---

[16] R.176 at 19. Before the parties' opening statements, the court also explained that "[i]t [was] the Government's responsibility to show [the jury] that it all fits together in the way in which they say it fits together beyond a reasonable doubt." Id. at 7.

[17] R.178 at 53. After closing arguments, the court gave an instruction regarding the beyond-a-reasonable-doubt standard and reminded the jury that "the burden is on the Government to prove beyond a reasonable doubt that a defendant is guilty of the charge, and here two charges, made against him and, in addition, a question of the amount of the drugs that the conspirators had in mind." Id. at 40. The court clarified that, in order for the jury to find Mr. Melendez guilty of conspiracy, "[t]he Government has to prove beyond a reasonable doubt two basic things." Id. at 51. First, it must show an agreement: "[T]he Government has to prove beyond a reasonable doubt . . . that they shared a general understanding with respect to the crime." Id. at 52. The court explained that "the object of the conspiracy that is alleged in the indictment is to distribute at least five kilograms of cocaine." Id. at 53. The court instructed the jury that it would have to resolve what the defendants had contemplated and agreed to with respect to the amount of drugs to be distributed. See id. at 54. In other words, the jury would have to find that the conspirators had "a shared understanding, an agreement that it [was] going to be five kilograms of cocaine" or the Government would not have satisfied its burden. Id. Second, the Government had to prove

-12-

that the jury would have to determine how much cocaine it believed was the object of the conspiracy.[18]

Contrary to Mr. Melendez's suggestion, the jury also made an individualized drug-weight finding beyond a reasonable doubt. Mr. Melendez was charged as a member of a two-person conspiracy and is therefore responsible for the entire amount of contraband. Our decision in United States v. Paladin, 748 F.3d 438 (1st Cir. 2014), squarely forecloses his argument. In Paladin, the defendant argued that the district court should have submitted "to the jury the question of whether [the defendant] was individually responsible for the charged quantity of cocaine (five kilograms or more)." Id. at 452. In rejecting this argument, we concluded that the defendant's submission

_____

that Mr. Melendez willfully joined the agreement. See id. at 51.

[18] Following the instructions, the court asked the parties if they had any objections. Mr. Melendez objected on grounds that are not raised on appeal. Following a brief recess, the court instructed the jury that the "verdict has to be unanimous." Id. at 64. In explaining the deliberation process, the court noted that the verdict would be returned on the verdict slip, which must "be signed by the foreperson indicating the verdict is unanimous with respect to the several questions that are being asked." Id. at 67. The court also explained that the verdict must be one "that each one of you individually is satisfied with." Id. At the conclusion of its instructions, the court again asked the parties if they had "anything further." Id. at 68. Both parties responded in the negative. See id. at 69.

"overlook[ed] the nature of the charged conspiracy." Id.
Because the charged five-kilogram weight was based solely on the
conspiratorial dealings of the two men, the district court did
not have to instruct the jury to make individualized findings
distinct from the conspiracy. See id. We specifically noted
that, in a conspiracy involving more than two conspirators, the
individualized determination that Mr. Melendez here seeks would
be necessary. See id.; see also United States v. Colón-Solís,
354 F.3d 101, 103 (1st Cir. 2004). Here, the charged conspiracy
was based on the agreement between Mr. Melendez and Guzman, and
both were responsible for the amount they agreed to distribute.
When the jury found that the "amount of cocaine intended to be
distributed by the conspirators" was "5 kilograms or more,"[19] it
therefore necessarily found that the five kilograms were
attributable to Mr. Melendez. See Paladin, 748 F.3d at 452.
Delgado-Marrero, on which Mr. Melendez relies, is not to the
contrary, since the jury here was instructed properly. See 744
F.3d at 186-87.

        Here, the situation is substantially different. The
district court did instruct the jury, both before and after the

_____

        [19]    Id. at 78.


-14-

parties presented their cases, that the drug weight was an element of the crime charged and that it was the object of the conspiracy that the Government had to prove. The district court clearly told the jury that it had to find the drug weight beyond a reasonable doubt. There is no indication that the jurors failed to understand that drug weight was an element of the offense that the Government had to prove beyond a reasonable doubt.

2.

Mr. Melendez also submits that the district court erroneously suggested that the verdict need not be unanimous when it responded to the jury's second question: "Must we be unanimous on all three count decisions?"[20] The district court answered that the jury "should make every effort to reach a unanimous decision regarding each of the questions put to you on the verdict slip."[21] In Mr. Melendez's view, this instruction contains the obvious implication that unanimity is aspirational, but not essential. We cannot accept this contention. The supplemental instruction was neither incorrect nor misleading.

---

[20]    Id. at 75.

[21]    Id. at 77.

As a general principle, "a jury in a federal criminal case cannot convict unless it unanimously finds that the Government has proved each element." Richardson v. United States, 526 U.S. 813, 817 (1999). In one limited sense, of course, a unanimous verdict is aspirational in every trial prior to verdict. Unanimity, while possible and certainly desirable, is not the inevitable consequence of convening a jury. See Fed. R. Crim. P. 31(b)(3) (allowing for mistrials and retrials). The district court's use of the word "should," therefore, does not make the court's supplemental instruction incorrect. There was, moreover, no indication here that a jury was deadlocked. Under these circumstances, instructing the jury that it should continue deliberating does not warrant reversal. See United States v. Figueroa-Encarnación, 343 F.3d 23, 31–32 (1st Cir. 2003) (noting that an "instruction to continue deliberating did not contain the coercive elements of a garden-variety Allen charge, but was merely intended to prod the jury into continuing the effort to reach some unanimous resolution" (footnote omitted)).[22]

---

[22] Even if the jury were deadlocked, the district court's instruction would not be in error. Instructing the jury that it was not required to reach a unanimous verdict is a cornerstone of an Allen charge. It alleviates the coercive effect of an

We already have noted that the district court, on multiple occasions, instructed the jury that its verdict must be unanimous.[23]   Certainly, there is no evidence that the verdict was anything other than unanimous.   See United States v. Lemmerer, 277 F.3d 579, 592 (1st Cir. 2002) (finding no error for the district court's failure to excuse a "recalcitrant juror" in the absence of evidence that the jury's verdict was not unanimous).   Upon returning to the courtroom to deliver its verdict, the court asked the jury foreperson, "I understand the

instruction that encourages the jury to break a deadlock by reconsidering their positions and continuing to deliberate.  See United States v. Manning, 79 F.3d 212, 223 (1st Cir. 1996) (holding that the response of the district court "not only failed to discourage the notion that the jury was bound to continue to deliberate indefinitely, it suggested the opposite, i.e., that the jury is required to do so").

[23]    See supra note 18.   Courts have upheld similar instructions encouraging a jury to continue to deliberate to reach a unanimous verdict.  See United States v. McDonald, 759 F.3d 220, 223-25 (2d Cir. 2014) (upholding supplemental instruction that jury was "to continue to deliberate to see whether you can reach a unanimous verdict, in light of all the instructions that I have given you"); United States v. Davis, 154 F.3d 772, 783 (8th Cir. 1998) ("However, [t]he mere fact . . . that an instruction could conceivably permit a jury to reach a non-unanimous verdict is not sufficient to require reversal when the jury has been instructed that it must reach a unanimous verdict." (alterations in original) (internal quotation marks omitted)); United States v. Solomon, 565 F.2d 364, 365-66 (5th Cir. 1978) (per curiam) (upholding instruction, "Please try to reach a unanimous verdict as to all counts. Please continue your deliberations for a while longer to see if you can reach a unanimous verdict as to all counts").

jury has a unanimous verdict; is that correct?"[24]  The foreperson

replied, "Yes."[25]  After the verdict was read, the clerk asked,

"So say you Mr. Foreperson, and so say you all, members of the

jury?"[26]  The jury responded affirmatively.

In sum, we believe that the jury instructions,

assessed in their totality, correctly guided the jury in its

determination.

B.

---

[24]     R.178 at 78.

[25]     Id.

[26]     Id.  We note that, in addition to failing to object to the jury instruction, Mr. Melendez did not ask that the jury be polled after it returned its verdict.  If Mr. Melendez believed that the jury verdict was not unanimous, "he should have exercised his right to poll the jury individually before the verdict was recorded, so that 'any doubts whatever about the state of the jurors' minds could have been cleared up and appropriate action taken before the jury was dismissed.'" United States v. Lemmerer, 277 F.3d 579, 593 (1st Cir. 2002) (quoting United States v. Luciano, 734 F.2d 68, 70 n.1 (1st Cir. 1984)).  The rule exists so "'the court and the parties [can] ascertain with certainty that a unanimous verdict has in fact been reached and that no juror has been coerced or induced to agree to a verdict to which he has not fully assented.'"  Id. (quoting Miranda v. United States, 255 F.2d 9, 17 (1st Cir. 1958)).  Having failed to request that the court poll the jury, Mr. Melendez cannot use the supplemental instruction to question the unanimity of the verdict.  The district court did not plainly err by encouraging, but not requiring, that the jury deliberate until it reached a unanimous verdict.

-18-

We turn now to Mr. Melendez's contentions about his sentence. After the Presentence Report ("PSR") was submitted to the court, Mr. Melendez filed an objection seeking a two-level reduction for acceptance of responsibility and the elimination of the two-level enhancement for possession of a firearm during the commission of the offense. Mr. Melendez also requested that the court impose a below-guidelines sentence due to mitigating circumstances.

At the outset of the sentencing hearing, the court asked the parties if they thought there was an Alleyne issue.[27] Mr. Melendez's counsel responded that Alleyne was not a problem because "[t]he factual issue of weight was brought for the jury to determine, and the jury heard the evidence concerning that."[28] The court rejected Mr. Melendez's objections to the PSR, finding that Mr. Melendez did not accept responsibility for the crime because "[h]e chose to contest it, and he was contesting the

---

[27] As noted earlier, Alleyne v. United States, 133 S. Ct. 2151 (2013), provides that any fact that triggers a mandatory minimum sentence is an element of the offense that must be submitted to the jury and proved beyond a reasonable doubt. See id. at 2155.

[28] R.179 at 5.

core of the case, a significant amount of drugs being trafficked."[29]

The court determined Mr. Melendez's offense level to be thirty-four, which yielded a guidelines range of 151 to 188 months' imprisonment. The district court nevertheless sentenced Mr. Melendez to 144 months' imprisonment, followed by five years of supervised release. Among the mitigating factors noted by the court was "Mr. Melendez's parsing of the drug weight involved."[30] The court noted that Mr. Melendez's willingness to admit to the three-kilogram charge "is a reflection of the discount from the Guidelines that I am imposing here, a modest one, but one nevertheless."[31]

1.

Mr. Melendez first submits that the jury should have made an individualized drug determination with respect to him. We review de novo this issue. See United States v. Cintrón-Echautegui, 604 F.3d 1, 5 (1st Cir. 2010).

Mr. Melendez submits that because the jury made a determination as to the whole conspiracy rather than as to him

---

[29]   Id. at 7.

[30]   Id. at 25.

[31]   Id. at 26.

individually, the district court was unable, under the Supreme Court's holding in Alleyne, to make an individualized finding as to whether he was responsible for sufficient drugs to justify a mandatory minimum sentence.[32]  Mr. Melendez also submits that the court should have directed the jury to make a finding as to the drug weight specifically attributable to him.

To the degree that Mr. Melendez relies on Alleyne, this argument is waived.  Mr. Melendez expressly disclaimed any Alleyne error at sentencing.  In any event, the argument is without merit.  As we have explained, because Mr. Melendez participated in a two-person conspiracy, the jury necessarily made an individualized drug-weight determination.  That is sufficient to support the district court's sentencing decision. See United States v. Acosta-Colón, 741 F.3d 179, 192 (1st Cir. 2013).

2.

Mr. Melendez submits that the district court erred in not granting him a two-level reduction for acceptance of responsibility.  We uphold a district court's decision to deny this reduction unless the decision is clearly erroneous.  See

---

[32]  Mr. Melendez was subject to a ten-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A).

United States v. Garrasteguy, 559 F.3d 34, 38 (1st Cir. 2009); United States v. Baltas, 236 F.3d 27, 37 (1st Cir. 2001).

Section 3E1.1(a) of the Sentencing Guidelines provides that a district court may reduce a defendant's offense level by two levels if the defendant "clearly demonstrates acceptance of responsibility for his offense." "To prove acceptance of responsibility, a defendant must truthfully admit or not falsely deny the conduct comprising the conviction, as well as any additional relevant conduct for which he is accountable." Garrasteguy, 559 F.3d at 38. The burden is on the defendant to establish his eligibility for a decrease in the offense level. See id. If a defendant proceeds to trial, he greatly diminishes his chances of receiving a reduction; "proceeding to trial creates a rebuttable presumption that no credit is available." See id. at 38-39.

In support of his contention that he should have been awarded a reduction for acceptance of responsibility, Mr. Melendez submits that he acknowledged his guilt in his motion to dismiss the original indictment, in his trial memorandum, and in his repeated assertion of that position "at

every turn during the trial."[33] He acknowledges that he disputed the drug weight, but contends that the weight of the substance was not a core element of the crime of conspiracy but only an aggravating element.

We cannot accept this contention. First, the record clearly reveals that Mr. Melendez did not admit his participation in the conspiracy until trial commenced. In his pretrial memorandum, submitted to the court thirty days before trial, Mr. Melendez continued to contest his guilt and to argue that he did not conspire to distribute cocaine but, instead, simply entered into a buyer-seller arrangement with Guzman.[34]

Mr. Melendez's protestation that he did not participate in a conspiracy, on its own, would be sufficient to uphold the district court's decision to deny the reduction. We note, however, that Mr. Melendez's dispute of the drug weight would be an adequate and independent basis for refusing the reduction. In Garrasteguy, we upheld a district court's refusal

---

[33] Appellant's Br. 25.

[34] See R.92 at 2 ("The defendant posits that he is not guilty of the crimes charged as there is no evidence to prove that a conspiracy existed to distribute cocaine between Mr. Melendez and Mr. Guzman in said amounts nor was there a conspiracy with any others to distribute cocaine by Mr. Melendez.").

to grant a reduction for acceptance of responsibility after a defendant admitted his guilt to a drug-conspiracy charge but disputed the drug weight at trial. See 559 F.3d at 39-40. We noted that requesting a trial about drug weight is not consistent with the acceptance of responsibility. See id. at 39. We further noted that, because the sentencing court balanced the defendant's admission of guilt with the fact that he disputed the drug weight at trial, the district court did not clearly err. See id. at 39-40.[35]

Here, the district court noted that after Mr. Melendez tried unsuccessfully to "tailor the amount of drugs involved" during plea negotiations, he refused to plead guilty and proceeded to trial.[36] The court was cognizant that "[a] defendant is certainly entitled to test aspects of the Government's case without necessarily giving up the right to

---

[35] Our decision in United States v. Garrasteguy, 559 F.3d 34 (1st Cir. 2009), is compatible with the decisions of other courts of appeals. Courts have upheld regularly a district court's decision to deny an acceptance-of-responsibility reduction for contesting facts underlying a criminal charge, such as drug weight. See United States v. Acosta, 534 F.3d 574, 580-81 (7th Cir. 2008) (affirming the denial of the acceptance-of-responsibility reduction after the defendant contested the drug weight listed in the PSR); United States v. Annis, 446 F.3d 852, 857-58 (8th Cir. 2006) (affirming denial when the defendant contested the quantity of drugs).

[36] R.179 at 7.

assert that there has been acceptance of responsibility."[37]  But the court reasonably concluded that Mr. Melendez did not accept responsibility because he chose to contest the drug weight, which was "the core of the case."[38]

## Conclusion

The judgment of the district court is affirmed.

AFFIRMED

---

[37]  Id.

[38]  Id.  Mr. Melendez attempts to distinguish Garrasteguy because, after he had rejected a plea agreement for the five-kilogram charge, the Government added the firearms charge.  But the issuance of a superseding indictment with an additional charge has no bearing on the acceptance-of-responsibility determination.  The Government may charge a defendant with an additional offense if the defendant refuses to plead guilty to a lesser offense.  See Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978) (holding "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion"); United States v. Jenkins, 537 F.3d 1, 4-5 (1st Cir. 2008) (holding that, absent a showing of actual vindictiveness, we will not disturb the district court's judgment).